513 So.2d 1151 (1987)
Hanina TRUSCHINGER
v.
Helen PAK, Buddy Pak, Mary Tsai, Mark Tsai and Mitchell Serio.
No. 87-C-0860.
Supreme Court of Louisiana.
October 19, 1987.
*1152 R. Louis Carruth, New Orleans, for applicant.
Gary West, New Orleans, for respondent.
DIXON, Chief Justice.
This is a suit for damages for failure to consent to a sublease. The trial court found that the lessor, Mitchell Serio, unreasonably withheld his consent to a sublease between plaintiff Hanina Truschinger and co-defendants, Helen Pak, Buddy Pak, Mary Tsai and Mark Tsai. The court of appeal affirmed. Truschinger v. Pak, 503 So.2d 208 (La.App. 4th Cir.1987). We reverse.
This case involves a piece of property leased and subsequently subleased several times. In September, 1976, defendant-lessor Mitchell Serio leased property at 140 St. Charles Avenue to lessee Kenneth Upton, individually and as president of Flame-N-Burger, for use as a fast food hamburger restaurant. The property was located two doors from Serio's delicatessen at 130 St. Charles Avenue. The lease was to run from October, 1976 to October, 1986, with an option to renew for a second ten year term. In addition to a monthly rent of $900, Upton paid Serio $15,000 "as consideration for obtaining the lease." The lease also contained two clauses of importance in this case: (1) if Serio sold the building, the lease would be canceled and the lessee obligated to vacate upon twelve months' notice; (2) the lessee Upton was not permitted to sublease without the written consent of the lessor, Serio.
In August, 1977, Upton sublet the property to Art Spiropoulous who ran the business as the "Coffee Cove," selling Greek and American food. In addition to being obligated to pay the monthly rent, Spiropoulous paid Upton $15,000 "as consideration for obtaining this sublease," and Spiropoulous agreed to abide by the terms in the primary lease. Serio consented in writing to that sublease.
Spiropoulous and his wife, Lynne Portlock, divorced in 1980. As part of the property settlement executed by them in 1979, Portlock assumed the obligations of the sublease.
Both sublessor Upton and lessor Serio signed an "Agreement to Add Additional Party [Portlock] to Sublease" on January 7, 1980. Lynne Portlock subsequently sublet the property to plaintiff Hanina Truschinger on July 1, 1980. Truschinger agreed to abide by the terms of the primary lease and paid Portlock $32,000 consideration "for obtaining the sublease and for the trade name `Coffee Cove.'" Truschinger, Portlock and Upton signed this sublease; Serio did not.
Although the primary lease stated that Serio's consent was necessary for subleasing, Truschinger nevertheless ran the business for three years until, planning to move to another city to help care for her sick mother, she found two couples, the Paks and Tsais, who were willing to buy the business and sublet the property. The Paks and Tsais planned to add some Oriental food items to the menu. In September, 1983, Swan Realty, through its agent, Kenneth Upton, negotiated the offer to purchase and sublease. The Paks and Tsais agreed to abide by the terms of the primary lease and to pay $80,000 as consideration for obtaining the sublease and for the trade name "Coffee Cove." Truschinger, as part of the agreement, consented to pay the agent's commission of 6%; Upton was to receive 3% or $2400. The offer was conditioned upon the approval of both sublessor Upton and lessor Serio. Upton approved; Serio did not. As a result of Serio's failure to consent to the sublease, the sale and sublease were never consummated.
Truschinger filed suit against Serio,[1] alleging that he arbitrarily and capriciously *1153 withheld his consent, resulting in $80,000 damages for the loss of the sale.
At trial on the merits, Truschinger and Serio offered contradictory evidence on the events that occurred when Truschinger attempted to secure Serio's consent to the sublease. Essentially, Truschinger's testimony was that in September, 1983, she and her sister met with Serio at his delicatessen where he told Truschinger that he would sign the sublease for half the purchase price of the business$40,000. Truschinger also testified to a second meeting, attended by herself, her sister, Mitchell Serio, Jack Serio, a nephew, and Nick Noriea, an attorney for Serio. Truschinger stated that Noriea told her to give Serio $40,000 to obtain his consent.
Further, Truschinger attested to a phone conversation between herself and Jack Serio in which the latter stated that if Truschinger could convince the purchasers to pay $1200 instead of $900 per month rent that Mitchell Serio would leave her alone. Truschinger's sister corroborated the testimony regarding the meetings.
Mitchell Serio and witnesses for the defense, Jack Serio and attorney Nick Noriea, denied that any discussion about money in exchange for consent ever transpired. Serio also introduced evidence of three letters written on his behalf by Nick Noriea. The first, dated October 11, 1983 and sent to Truschinger's attorney and Kenneth Upton, stated that Serio objected to any further subleasing of the property and that Serio considered the lease violated in three respects: (1) the Portlock-Truschinger sublease was entered into without Serio's written consent; (2) the purpose of the original lease had been greatly expanded; (3) the property had been poorly maintained.
The second letter, dated November 1, 1983, and sent to the attorney for the Paks and Tsais, requested a menu and description of the food to be sold at the "Coffee Cove." Noriea stated in the letter that Serio was negotiating with a prospective tenant for his own delicatessen and that that potential lessee planned to run an Oriental food business there.
The third letter, dated December 12, 1983, and sent to Kenneth Upton, informed him that he was in violation of his lease in two regards: (1) the use of the property in 1983 was not in accord with the "fast food hamburger restaurant" use stated in the primary lease; (2) Upton had not obtained Serio's written consent before subletting to Truschinger. Additionally, Serio testified that he also withheld consent from the sublease at issue here because he was negotiating at that time for the sale of the building in which the "Coffee Cove" was located.
The trial court held that Serio unreasonably withheld his consent and awarded Truschinger $80,000 in damages. The court noted that the only "real and valid objection that Mr. Serio could have to the sublease would be the operation of a competing Chinese restaurant" but concluded that "this excuse was not made known to the plaintiff or Mr. Upton until sometime later and that it has been used during this trial as a tactical defense."
The Fourth Circuit Court of Appeal, Judge Ward dissenting, affirmed on the ground that the determination of what constitutes unreasonable withholding of consent is a factual one and that the trial court committed no manifest error in finding that the reasons advanced by Serio "were insufficient or not credible enough to support defendant's rejection of the proposed sublease." Truschinger v. Pak, supra at 210. We granted writs to review the standard applied by the lower courts to Serio's refusal to consent to the sublease.
"Article 2725 of the Louisiana Civil Code provides that the lessor may by contract prohibit the lessee from entering a sublease:
"The lessee has the right to underlease, or even to cede his lease to another person, unless this power has been expressly interdicted.
"The interdiction may be for the whole, or for a part; and this clause is always construed strictly.'
*1154 The article is not clear as to whether a clause expressly interdicting the lessee's right to sublease is to be construed strictly for or against the lessee. However, this Court has said that `[t]he language is taken literally from the Napoleon Code; and the interpretation which it appears to have uniformly received in France ... is that the prohibition must be construed strictly against the lessee.' Cordeviolle v. Redon, 4 La.Ann. 40 (1849)." Illinois Central Gulf Railroad Co. v. International Harvester Co., 368 So.2d 1009, 1013 (La.1979).
A lease partly interdicts a lessee's right when it stipulates that the lessor's written consent to the sublease must be obtained. A lease also partly interdicts a lessee's right to sublease when it specifies that the written consent of the lessor may not be unreasonably withheld. When a lease contains only the stipulation that the lessor's written consent is necessary to sublease, the lessor's right to refuse will be judicially protected unless the lessor has abused that right. Illinois Central Gulf Railroad Co. v. International Harvester, supra. When a lease contains the additional proviso that the lessor's consent may not be unreasonably withheld, the lessor's right to refuse will be judicially protected unless the lessor's refusal was unreasonable. Caplan v. Latter & Blum, 468 So.2d 1188 (La.1985).
The standard to be applied in deciding whether a lessor's refusal to consent to a sublease will be judicially protected depends on the rights that the lessee or sublessee possesses with regard to subletting. In this case, the primary lease provided that the "Lessee is not permitted to rent or sub-let ... without the written consent of the Lessor." Each subsequent sublease contained the stipulation that the sublessee was to "abide by the conditions and terms of the lease." In addition to that clause, an addendum to the sublease between Truschinger and Portlock also stipulated that if Truschinger desired to sublet, "permission must be obtained in writing from Lessor."[2] Neither the primary lease nor the subsequent subleases contained an "unreasonably withholding" clause that limited the rights of the lessor, Serio. In each lease and sublease Serio had clearly prohibited subletting without his written consent.
Truschinger never obtained the right to sublet. Serio never lost the right to refuse to consent to a sublease by Truschinger. The only possibility is an application of the doctrine of abuse of rights. The Abuse of Rights doctrine is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights. In Morse v. J. Ray McDermott & Co., 344 So.2d 1353 (La.1977), this court recognized the Abuse of Rights doctrine. There, we held that an employer could not defeat his obligation to pay an employee the remaining portions of the employee's compensation by terminating his employment without cause. Since that case, neither this court nor the courts of appeal have applied the doctrine.
The Abuse of Rights doctrine has been applied only when one of the following conditions is met:
(1) if the predominant motive for it was to cause harm;
(2) if there was no serious or legitimate motive for refusing;
(3) if the exercise of the right to refuse is against moral rules, good faith, or elementary fairness;
(4) if the right to refuse is exercised for a purpose other than that for which it is granted.
Illinois Central Gulf Railroad Co. v. International Harvester Co., supra; Cueto-Rua, Abuse of Rights, 35 La.L.Rev. 965 (1975).
We defer to the trial court's finding that Serio informed Truschinger that he wanted one-half the purchase price (that is, $40,000), in return for his consent. Truschinger refused; Serio withheld his consent. His refusal does not rise to an abuse of rights. Serio's predominant motive was *1155 economic; it was not a wish to harm Truschinger. Serio's motive was serious and legitimate. Each lessor or sublessor in this chain received consideration for granting the lease or sublease. Each lessee or sublessee agreed to pay the consideration. The record is devoid of any evidence that such business practice is against moral rules, good faith, or elementary fairness. Serio received $15,000 when he leased to Upton. Each succeeding sublessor received a sum at least as great as that. Serio's refusal was exercised for the purpose for which it was grantedfor the owner to maintain control over who leases his property.
For the foregoing reasons, the judgments of the courts below are reversed, and there is now judgment in favor of defendant, Mitchell Serio, and against plaintiff, Hanina Truschinger, dismissing plaintiff's suit at her cost.
NOTES
[1] The Paks and Tsais and Kenneth Upton were also defendants in this suit; they are no longer parties.
[2] This clause did not purport to give Truschinger a greater right to sublet; nor could it. Only Serio could give a lessee or sublessee a greater right than what was already stated in the primary lease.