549 So.2d 826 (1989)
MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY
v.
Steven F. NAILS.
No. 89-C-0550.
Supreme Court of Louisiana.
September 12, 1989.
Rehearing Denied October 12, 1989.
*827 Hal J. Broussard, Paul B. David, Broussard & David, for applicant.
Malcolm A. Meyer, Baldwin & Haspel, for respondent.
COLE, Justice.
Plaintiff insurer issued a group policy to defendant's employer, Exxon Corporation. Due to a non-work-related accident, defendant was rendered quadriplegic. Subsequently, defendant was terminated and thus no longer eligible for membership in the group policy. The policy provided an additional twelve months of coverage to any employee totally disabled at the date of termination. At the end of this extended benefit period, plaintiff continued to pay defendant's medical expenses but sought a declaratory judgment seeking relief from the obligation for future expenses. Defendant reconvened for the amount of unpaid medical bills plus penalties and attorney fees. He argued it would be an abuse of rights for plaintiff to exercise its contractual right to terminate coverage.
The trial court granted plaintiff's motion for partial summary judgment declaring plaintiff was entitled to terminate coverage in accord with the policy. It then severed the reconventional demand and stayed that claim pending appeal of the policy coverage issue. The court of appeal found the doctrine of abuse of rights inapplicable and affirmed. Massachusetts Mutual Life Insurance Company v. Nails, 539 So.2d 797 (La.App. 3d Cir.1989). We affirm.

FACTS
Employees of Exxon Corporation were covered under a group health and accident policy issued by plaintiff Massachusetts Mutual Life Insurance Company. On June 3, 1984, Steven Nails, an Exxon employee for six years, was involved in a non-work-related automobile accident and rendered a quadriplegic. In accordance with its employment practices, Exxon terminated Nails on October 31, 1984.
At the date of termination, Nails was totally disabled by the injuries he had suffered in the accident. Between June 3 and October 31, 1984, Nails was still an Exxon employee and under the policy terms. The costs of his treatment were fully covered. After Nails was terminated, coverage continued because the policy included an extended benefits clause, providing an additional twelve months of benefits for an employee who was disabled at the time of termination. Thus, under the policy terms Massachusetts Mutual paid for Nails' medical expenses in connection with his quadriplegia from June 3, 1984 until October 31, 1985 and during that period paid to Nails and to third parties on his behalf a total of $329,084.94.
After October 31, 1985, Massachusetts Mutual continued to pay defendant's medical expenses under protest and filed an action for declaratory judgment seeking relief from any further obligation to provide coverage for future medical expenses incurred as a result of Nails' quadriplegia. The trial court rejected Nails' argument that he was entitled to receive benefits up to the maximum policy limits of $500,000 regardless of when the expenses were incurred.

ISSUE RESOLUTION
Defendant Nails argues the termination of insurance coverage under the policy's terms is inherently unfair because it is triggered by the very event, severe injury to the insured, for which coverage is provided. If an employee becomes disabled, coverage for medical expenses associated with the disability will terminate by a self-activating policy provision, even though coverage was in effect when the disability occurred. Defendant contends enforcement of such a provision is an abuse of right by the insurer and is barred by our decision in Cataldie v. Louisiana Health Service and Indemnity Company, 456 So.2d 1373 (La.1984). We disagree and, for the following reasons, affirm the lower courts, finding plaintiff has met its obligation under the policy and is thus not liable for future medical expenses incurred *828 by Nails in connection with his quadriplegia.

ANALYSIS
The group policy issued by Massachusetts Mutual to Exxon employees included this provision:
Except as may be provided to the contrary in this Part, an employee's Personal Insurance under any Part of this policy shall cease on the first to occur of the following dates:
....
(f) The last day of the policy month during which employment is terminated. Termination of employment, for the purpose of this section and for no other purpose, means cessation of active work as an employee in a class of employees eligible for insurance hereunder, except that
(i) If the employee ceases active work because of disability due to disease or accidental bodily injury, his employment may be continued during the continuance of such disability until terminated by the Policyholder.
In accord with this provision, Nails' coverage terminated on October 31, 1984 when his employment with Exxon terminated. However, the policy included an additional clause which provided:
If a member of a Family incurs Covered Medical Expenses within a period of twelve months immediately following the discontinuance of the insurance on such member under this Part, benefits shall be payable during said twelve months, in accordance with the following subsections, provided

. . . . .
b. the member was totally disabled by such illness on the date of such discontinuance and remained so disabled continuously until the incurrence of the expenses for which claim is made.
Since Nails was totally disabled at the date of termination, he continued to be eligible for policy benefits for the twelve months following his October 31, 1984 termination.
Also of relevance is a clause in the policy limiting the maximum benefit for covered medical expenses to $500,000. The employees' insurance handbook explains this limitation is "per person per lifetime." Nails acknowledges he was not entitled to coverage for any new injury or illness that would have arisen after the date Exxon terminated his employment. He also acknowledges that under the policy terms, Massachusetts Mutual is not obligated to pay for medical expenses incurred after the one year extended benefits period. Instead, Nails argues the policy's twelve month benefits limitation should be set aside under the abuse of rights doctrine and that he should be able to recover benefits up to the $500,000 policy maximum.
Nails reasons the termination provision is unjust because if the employee is hurt so severely that he can no longer work, coverage for medical expenses will terminate even though coverage was in effect when the injury arose. We must now determine whether, as defendant argues, the termination of insurance under these conditions constitutes an abuse of rights.
This Court recognized the doctrine of abuse of rights in holding an employer could not defeat his obligation to pay an employee the remaining portions of the employee's compensation by terminating his employment without cause. Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La.1976), on rehearing. Nevertheless, the doctrine of abuse of rights has been invoked sparingly in Louisiana. Illinois Central Gulf Railroad Company v. International Harvester Company, 368 So.2d 1009 (La.1979), rehearing denied. The doctrine is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights. Truschinger v. Pak, 513 So.2d 1151, 1154 (La.1987).
The doctrine of abuse of rights has been applied only when one of the following conditions is met:
(1) if the predominant motive for it was to cause harm;
*829 (2) if there was no serious or legitimate motive for refusing;
(3) if the exercise of the right to refuse is against moral rules, good faith, or elementary fairness;
(4) if the right to refuse is exercised for a purpose other than that for which it is granted.
Truschinger, supra, at 1154, citing Illinois Central Gulf Railroad Co., supra; Cueto-Rua, Abuse of Rights, 35 La.L.Rev. 965 (1975).
Some of these conditions have been mentioned in health insurance cases dealing with the impact of termination of coverage on existing claims. However, most of those cases have been decided on contract and statutory law. Massachusetts Mutual Life Ins., 539 So.2d at 798-99; see McKenzie and Johnson, 15 Civil Law TreatiseInsurance Law and Practice, § 286 (1986) (hereinafter McKenzie and Johnson). In the decision relied on by defendant, Cataldie, supra, we briefly adverted to but did not apply the abuse of rights doctrine. We were able to resolve that case under contract and statutory law.
Defendant Nails acknowledges he is entitled to no relief under contract law because the policy's terms clearly and unambiguously bar further recovery. Likewise, he is entitled to no statutory relief since the policy meets the statutory requirements. Thus, he relies solely on his claim that allowing Massachusetts Mutual to enforce limitations in the policy would be an abuse of right. We, therefore, examine the conditions which might support such a claim.
1. predominant motive to cause harm
Defendant Nails does not allege that plaintiff's invocation of the policy limitations was motivated by a desire to cause him harm. Indeed, such a claim would be groundless since Massachusetts Mutual's action is not directed toward Nails. In fact, Massachusetts Mutual has not acted to terminate Nails' coverage and this case can be distinguished from those in which an insurer has attempted to cancel coverage for an ongoing illness which arose while the policy was in force. See e.g., Cataldie, supra; see also Breland v. Louisiana Hospital Services, Inc., 468 So.2d 1215 (La.App. 1st Cir.1984). In those cases the insurers took affirmative action to end their liability for medical expenses for ongoing illnesses, while here coverage has expired as provided by the terms of the insurance contract.
Nails does not complain of lack of notice since the limiting provisions are clearly written into the policy and included in the employee insurance handbook provided to Exxon employees. Thus Nails had access to information concerning the extent of his benefits in the event he desired greater coverage than that provided by his employer's group policy. The termination of coverage after fulfillment of the twelve month extended benefits period and the lifetime $500,000 maximum on recovery were limiting provisions which affected all employees equally, were in effect before Nails was injured, and were not directed toward him.
The policy not only provided Nails with extended coverage for a year after he was no longer employed by Exxon, it also included a conversion option which would have allowed him to maintain eligibility for benefits. Under these facts, we do not find the terms of the policy oppressive and agree with the court of appeal that enforcement of the termination clause was not motivated by an intent to harm defendant.
2. serious or legitimate motive for refusal
If a party has a legitimate and serious interest in exercising a contractual right, he may do so even if it causes harm to another. However, if a party does not have a legitimate and serious interest in the exercise of the right, and to do so would bring unnecessary harm to another, the doctrine of abuse of rights will bar the exercise of the right. Breland, 468 So.2d at 1223.
The general rule is that coverage under a group policy terminates automatically with termination of employment. Not infrequently, group policies contain provisions extending coverage in the event of *830 total and permanent disablement of the insured. Annotation, Termination of Coverage under Group Policy with Regard to Termination of Employment, 68 A.L.R.2d 8, 95. Such "disability extension" clauses create a grace period, extending existing coverage but not creating any new rights in the employee. Id. at 96. The period for which coverage of the insured is extended depends primarily on the language of the clause. Id. at 97.
The levels of coverage in group insurance policies are based on two factors. First, the level of benefits is computed by determining how much coverage can be offered at a reasonably attractive cost which will nevertheless generate sufficient income to meet the expenses of those who participate in the pool of funds. Second, benefit levels in policies covering a large group of employees are determined by negotiation, resulting in bargained for agreements between the policyholder and the insurer.
By spreading the risk throughout a group, coverage is obtained for all in the group which might not be available to some members of the group individually. Thus, group coverage is more economical than it would otherwise be. However, one can only share in the benefits of the group so long as one is a member and upon leaving the group, an insured ceases to be insured. Massachusetts Mutual, 539 So.2d at 799. Policies typically provide that benefits will terminate upon the cessation of membership in the group, either immediately or after an extended benefits period. Annotation, Termination of Coverage, supra at 95.
In this case, coverage is not being terminated due to cancellation, nor due to change in coverage or in rates after the contract was entered into. Instead, coverage is expiring due to ordinary policy limitations incorporated into a bargained for insurance contract. We believe Massachusetts Mutual sought to invoke the policy limitations for serious and legitimate reasons.
3. considerations of moral rules, good faith or elementary fairness
The heart of Nails' claim is that it is unfair for Massachusetts Mutual to terminate coverage in accord with the policy's provisions. By limiting the extent of coverage for an employee who becomes disabled, the insurer manages to circumscribe its losses. The employee, on the other hand, may be unable to obtain affordable coverage elsewhere.
It is necessary to keep in mind the distinction between this case and those in which the insurer has elected to cancel or increase the cost of coverage or to reduce benefits in accord with a policy provision giving it the right to do so. Such action was at issue in Cataldie, supra, where Blue Cross unconscionably increased the cost of coverage while concomittantly reducing the policy benefits after it was discovered that plaintiff's daughter had brain cancer. We were able to resolve that case on statutory and contractual grounds, rather than under the doctrine of abuse of rights.
The question of cancellation of insurance, which was the issue in Cataldie, is not at issue here. Therefore, we need not consider Massachusetts Mutual's argument that the legislative alteration of the statute we construed in that case, La.R.S. 22:213(B)(7), may have resulted in the overruling of Cataldie to some extent. See e.g., McKenzie and Johnson, supra, at 535. Plaintiff, however, does not rely on Cataldie's rule but on dicta in that case which referred to the doctrine of abuse of rights, citing authorities standing for the proposition that cancellation of benefits by the insurer will not be allowed when illness, injury or condition arises before the insurer's cancellation. Cataldie, 456 So.2d at 1376.
Thus, the abuse of rights doctrine was inapplicable in Cataldie. It was of consequence, however, in the subsequent decision in Breland, supra where Blue Cross cancelled an entire group policy in accord with a provision giving it the right to do so merely upon 30 days notice to the insured. At the time of cancellation, plaintiff, a group member, was being treated for renal *831 cancer under the policy and would have been unable to obtain other insurance. The court of appeal applied the doctrine of abuse of rights and found Blue Cross's action unconscionable. Upon rehearing, however, the Breland court ordered a remand for consideration of Blue Cross's argument that it had legitimate reasons for exercising its right to cancel and that it was in good faith in doing so. Id. at 1224, on rehearing.
This case is distinguishable, for the allegation of bad faith is not before us. Massachusetts Mutual took no affirmative action to cancel Nails' coverage but seeks merely to limit coverage in accord with legitimate contractual provisions which were in effect before defendant was injured and which have remained unchanged since that injury. Faced with questions of this nature, our courts have upheld limitations of benefits in group health insurance policies in effect at the time an employee's employment ended. See e.g., Mezzacappo v. Travelers Insurance Company, 523 So.2d 291 (La.App. 3d Cir.1988) (denial of plaintiff's claim for continuing reimbursement after extended benefits period for expenses in connection with injury due to pre-termination accident); Trevino v. Prudential Insurance Company, 504 So.2d 1179 (La.App. 3d Cir.1987), cert. denied, 506 So.2d 1230 (La.1987); LeBlanc v. Travelers Insurance Company, 486 So.2d 828 (La. App. 1st Cir.1986) (where surgery to remove growth on eye would be after termination even though diagnosis occurred one week before termination of employment, no coverage because not incurred during employment and coverage under group policy); Harrington v. Prudential Insurance Company, 477 So.2d 1272 (La.App. 3d Cir. 1985) (denial of coverage for last six months of pregnancy and for delivery where employee was three months pregnant when terminated); Levine v. National Life and Accident Insurance Company, 389 So.2d 864 (La.App. 4th Cir.1980) (policy's extended benefits period upheld where claimant disabled due to cancer and employment terminated on that basis).
The distinction between cancellation by the insurer and termination in accord with the policy is an important one. Cancellation of a policy carries with it significantly different consequences from termination or cessation of coverage for reasons such as termination of employment under a group policy with the employer, since cancellation is regulated by statute. McKenzie and Johnson, supra, § 286. See also Soniat v. Travelers Insurance Company, 538 So.2d 210 (La.1989). An insurer's right to cancel has also been restricted by the Cataldie holding, although as discussed supra that decision may have been overruled to some extent by the legislature. Id.
As the courts of appeal have noted, termination under valid policy provisions does not invoke the same concerns as does the unilateral cancellation of the policy by the insurer.
[W]e discern a distinct and important difference between `cancellation' of an insurance contract by the insurer and `termination' of coverage under a contract of insurance. `Cancellation' connotes the termination of coverage under an insurance contract, before the contractual termination date of coverage, with or without cause, by unilateral action of the insurer. La.R.S. 22:636. On the other hand, `termination' of coverage connotes cessation of coverage under an insurance contract by reason of passage of the policy period or the occurrence of some event anticipated by the terms of the contract. Thus, although insurance coverage terminates upon cancellation, termination of insurance coverage does not necessarily arise as a result of cancellation.
Mezzacappo, 523 So.2d at 294.
Termination of coverage was upheld in Harrington, supra, where plaintiff's wife was three months pregnant at the time his employment ended. On review, the court found the policy excluded coverage for expenses incurred after the employee's discharge with certain exceptions. Since plaintiff's delivery expenses did not fall within those exceptions, coverage was excluded under the policy. The court said,
We can find no statute ... that would prohibit the termination of benefits as *832 provided by the policy. The policy could and did provide that delivery expenses incurred after an employee's discharge were not covered.
Harrington, 477 So.2d at 1274. See also Trevino, supra.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La.C.C. art. 2046. An insurance policy is the contract between the parties, and, like other contracts, it is the law between them. Muse v. Metropolitan Life Insurance Company, 193 La. 605, 607, 192 So. 72, 74 (1939). As we said in that decision,
the rule is ... well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away the terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties, and embodying requirements, compliance with which is made the condition to liability thereon.

. . . . .
In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever condition they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts, or to take anything from them.
Muse, 192 So. at 75 (citation omitted).
In this case, the contract terms are clear and unambiguous, not in violation of statutory law or public policy and hence enforceable. Once Nails' employment was terminated due to disability, he was entitled to an additional twelve months of coverage for his condition which arose prior to the termination of his membership in the group policy. After fulfillment of that extended term of coverage, plaintiff's obligation to him ceased.
We conclude no moral rules were violated, Massachusetts Mutual was in good faith, and elementary fairness was fulfilled.
4. exercise of right for purpose other than that for which it was granted
We have discussed the purposes of the policy limitations which Massachusetts Mutual seeks to invoke. The insurer has the duty as well as the right to enforce these limitations in order to preserve the integrity of the pool of funds available to its remaining members. We find the insurer's good faith is evidenced by its continued payment of Nails' expenses during the pendency of this suit for declaratory judgment. There are no ulterior purposes. Massachusetts Mutual has no purpose other than enforcing its contractual right to impose the limitations.

CONCLUSION
If relief is to be made available to persons like Nails who suffer unfortunate and debilitating injury or illness which leads to the termination of their employment and hence to termination of their insurance, it must come from the legislature. As a matter of public policy, the legislature might require continued coverage of all risks which materialize prior to the cessation of an insured's membership in a group. Any such relief, however, is within the sphere of legislative reform and can not be imposed through the judicial restructuring of insurance policies.
For the foregoing reasons, we find the court of appeal was correct in holding the doctrine of abuse of rights did not apply to require extension of coverage beyond the twelve month period of extended benefits subsequent to Nails' termination of employment.
*833 Accordingly, we affirm the rulings of the lower courts.[1]
AFFIRMED.
WATSON and DENNIS, JJ., dissent.
LEMMON, J., dissents and assigns reasons.
DENNIS, WATSON and LEMMON, JJ., would grant a rehearing.
LEMMON, Justice, dissenting.
One day Nails was healthy and believed that his health insurance with major medical coverage protected him against the expenses of a major medical catastrophe up to the $500,000 limits of the policy. The next day he suffered a major medical catastrophe and learned his health insurance did not protect against major medical catastrophies which result in termination of employment (which almost all such catastrophies do). In effect his major medical coverage was illusory and was really contingent upon his remaining healthy enough to continue his employment.
Major medical coverage which lasts only until employment is involuntarily terminated by the injury or illness which gives rise to the claim simply is not major medical coverage. I would not allow an insurance company which has sold a health policy purporting to contain major medical coverage to avoid responsibility when a major medical catastrophe occurs during the existence of the policy. Nails paid for major medical coverage, and the risk for which he bargained to receive coverage and the insurer bargained to be exposed was realized while the policy was in effect. The insurer should be estopped from denying coverage for any expenses that arise from the major medical catastrophe that occurred during the existence of the policy with major medical features.
NOTES
[1] Massachusetts Mutual did not raise the issue below but asserts for the first time that Nails' claim under the abuse of rights doctrine is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001, et seq. We pretermit the question of whether ERISA applies under the facts of this case. Such a determination is unnecessary since the case is otherwise resolved.