670 So.2d 558 (1996)
LILAWANTI ENTERPRISES, INC.
v.
WALDEN BOOK COMPANY, INC., et al.
No. 95-CA-2048.
Court of Appeal of Louisiana, Fourth Circuit.
February 29, 1996.
*559 Jacob Kansas, Law Offices of Jacob Kansas, New Orleans, Louisiana, for Plaintiff/Appellant.
Charles E. McHale, Jr., New Orleans, Louisiana, for Defendants/Appellees.
Before BARRY, LOBRANO and JONES, JJ.
BARRY, Judge.
Lilawanti Enterprises, Inc. appeals a summary judgment in favor of the de la Vergne defendants, owners/lessors of the subject property. We affirm.

Facts
The de la Vergne defendants (de la Vergne) leased 739 Canal Street to Walden Book Company, Inc. in October 1984. That lease prohibited Walden from subleasing the property without approval of the lessor:
15. SUBLEASE. Lessee is not permitted to rent or sublet or grant use or possession of the premises to any other party without the written consent of the Lessor, which approval shall not be unreasonably withheld and then, only in accordance with the terms of this Lease. Should Lessee desire to sublet, permission must be obtained in writing through Lessor or Agent and such sublease shall be handled by Lessor's Agent at expense of the herein Lessee. [Emphasis added.]
Between August 1991 and April 1992 Lilawanti negotiated a sublease directly with Walden. Lilawanti made a $19,200 deposit and a sublease was executed April 17, 1992. On April 20, 1992 only five of sixteen de la Vergne owners consented in writing to the sub-lease.
Walden vacated the leased premises in February 1992 without de la Vergne's consent. On April 23, 1992 de la Vergne gave Walden written notice of Walden's default and de la Vergne's refusal to accept the sublease.
Lilawanti sued Walden, the de la Vergnes, and Joseph E. Albaral, the agent who negotiated the sublease. The petition alleges de la Vergne unreasonably refused consent and is liable for abuse of rights, intentional interference of Lilawanti's business relationship with Walden, and violation of the Louisiana Unfair Trade Practices and Consumer Protection Law. The deposit was returned and is not at issue.
The trial court granted summary judgment to Walden on March 2, 1994. Lilawanti's motion for appeal of that judgment was dismissed as untimely. The trial court orally granted summary judgment to Albaral at the February 17, 1995 hearing on Albaral's motion, but the record does not contain the judgment in favor of Albaral.
On April 3, 1995 the trial court granted de la Vergne's motion for summary judgment. Lilawanti appeals. de la Vergne answered the appeal and seeks "reversal" of the trial court's reasons for judgment. The reasons *560 are not part of the judgment; therefore, we do not address that argument.
Lilawanti argues it has a right of action for abuse of rights and intentional interference with a contract. Summary judgment was based on the record rather than on no right of action:
This matter was filed in September, 1992 and as of today, there is no evidence that the actions of the de la Vergnes or Mr. Albral [sic] was [sic] immoral, against public policy, oppressive or unscrupulous. Without such evidence, the plaintiff, Lilawanti cannot prove that the defendants violated the Louisiana Unfair Trade Practices Act.
In addition, because there is no contractual relationship between the plaintiff, Lilawanti and the de la Vergne defendants, Lilawanti has no claim under the abuse of rights doctrine.
The record does not disclose an issue of material fact under either theory.

Intentional Interference
Walden and Lilawanti executed a sublease which was subject to the written consent of de la Vergne. Consent was not given and the sublease was never effective. Therefore, it appears Lilawanti argues interference with a proposed contract.
The common law remedy for interference with a contract is based on the theory that there is a point beyond which no member of the community may go to intentionally meddle in the business affairs of another. 45 AmJur2d, Interference, § 1. Although historically that remedy was not available in Louisiana, the Supreme Court has recognized a narrowly defined cause of action for intentional interference with a contract. 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989).
9 to 5 Fashions held that a corporate officer has a duty to a third person who has a contractual relationship to the corporation not to intentionally cause the company to breach the contract. An officer who breaches that duty might be liable to the third person under the doctrine of intentional interference with contract.
This Court has proceeded cautiously in applying that theory. We have allowed an action for interference with a contract where the defendant breached an alleged duty to the plaintiff. Neel v. Citrus Lands of Louisiana, Inc., 629 So.2d 1299 (La.App. 4th Cir. 1993). In Neel the plaintiff alleged the defendant wrongfully denied plaintiff access to defendant's property in violation of a mineral lease between defendant and plaintiff's employer and thereby interfered with plaintiff's employment relationship. This Court held:
If Mr. Neel can establish that Citrus Lands had a duty to allow him to go on the land leased to [Neel's employer], then he may well be able to prove that Citrus Lands violated that duty and is liable for the consequent damages such as the loss of his job.
Neel v. Citrus Lands of Louisiana, Inc., 629 So.2d at 1301.
Liability for intentional interference rests upon the breach of a duty which the defendant owed to the plaintiff. de la Vergne did not owe a duty to Lilawanti, a third party who was not privy to the lease. Moreover, despite expansion of intentional interference under 9 to 5 Fashions, Inc. v. Spurney, supra, Lilawanti cites no law (we know of none) in which the Supreme Court has recognized an action in Louisiana for intentional interference with a proposed contract.
Caplan v. Latter & Blum, Inc., 468 So.2d 1188 (La.1985), cited by Lilawanti, is distinguishable. The lessee abandoned the property after the lessor refused to consent to a sublease, and the lessor sued for accelerated rentals. The Court held that the facts did not justify the lessor withholding consent to the sublease and dismissed the lessor's suit. Unlike the instant case, Caplan involved a dispute between parties to the principle lease and the prospective sublessee was not a party to the suit.
We conclude that Lilawanti is not entitled to a judgment for intentional interference of a contract as a matter of law.

*561 Abuse of Rights

Under the abuse of rights doctrine the holder of an individual right may not exercise that right to the detriment of another simply for the sake of exercising it. The doctrine is applied in limited circumstances because it renders unenforceable an otherwise judicially protected right. Truschinger v. Pak, 513 So.2d 1151, 1154 (La.1987). One of the following elements is required:
1) a right is used exclusively to harm another, or the predominant motive for exercising a right is to cause harm;
2) there is no serious and legitimate interest in the exercise of a right;
3) the exercise of a right is against moral rules, good faith, or elementary fairness; or
4) a right is exercised for a purpose other than that for which it was granted.
Truschinger held (after trial on the merits) that the lessor was not liable under the abuse of rights doctrine for refusing to consent to a sublease because his predominate motive was economic:
His refusal does not rise to an abuse of rights. (The lessor's) predominant motive was economic; it was not a wish to harm Truschinger. (The lessor's) motive was serious and legitimate.... The record is devoid of any evidence that such business practice is against moral rules, good faith, or elementary fairness.
Truschinger v. Pak, 513 So.2d at 1154-55.
Affidavits of two of the co-owners, Cyril Reiss de la Vergne and Katherine V. Rault, establish that the sublease was not as economically beneficial to the owners as the lease de la Vergne executed after Walden's default which provided more rent and repairs by the lessee. Additionally, the sublease with Lilawanti violated the primary lease which required a bookstore. Lilawanti did not refute the affidavits. There is no evidence that de la Vergne's refusal to approve the sub-lease was against moral rules, good faith, or elementary fairness.
We reject Lilawanti's argument that Truschinger is distinguishable because that lease did not contain an "unreasonable withholding" clause. Truschinger was based on the abuse of rights doctrine and did not address reasonableness.

Unfair Trade Practices and Consumer Protection Law
Lilawanti alleged that de la Vergne violated the Louisiana Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401 et seq., which provides:
Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

La.R.S. 51:1405.
The statutory definition of an unfair practice is broad and subjectively stated and does not specify particular violations. Jarrell v. Carter, 577 So.2d 120, 123 (La.App. 1st Cir.), writ den. 582 So.2d 1311 (La.1991). A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious. Id. Any person who suffers damage as a result of an unfair or deceptive act or practice which is unlawful under § 1405 has a private cause of action. La.R.S. 51:1409.
Lilawanti alleges de la Vergne's refusal was against moral rules and good faith, was unethical, oppressive, and unscrupulous and it offended public policy. The record does not support those conclusory allegations. Moreover, as stated above, Lilawanti did not controvert de la Vergnes' affidavits which show economic reasons for not accepting the sublease.
We conclude that Lilawanti is not entitled to a judgment based on the Louisiana Unfair Trade Practices and Consumer Protection Law.
The judgment is affirmed.
AFFIRMED.