Dear Mr. McCelland:
This office is in receipt of your request for an opinion in regard to hospitalization coverage for employees of the Consolidated Gravity Drainage District No. 1 in St. Mary Parish. You indicate the Drainage District changed hospitalization insurance carriers in March of 1993 and the new carrier, Blue Cross/Blue Shield would not insure two of the eleven employees due to pre-existing conditions. The prior carrier, PCRMA Group Health agreed to keep these two employees insured through their company, but the premiums have become extremely expensive. This expense is the basis of the following inquiries:
 1. Can the Board eliminate one of the employees insured with PGRMA from the Board's health insurance by offering him an early retirement with a lump sum payment in the amount of pay he would receive to the date of his retirement, Jan. 17, 1998, and payment of his premium into the retirement system until the time he would be eligible to draw his retirement; and,
 2. Can the Drainage District drop health insurance coverage on the two employees insured with PGRMA and still pay health insurance coverage for the other nine employees who are insured through Blue Cross/Blue Shield.
In Atty. Gen. Op. No. 96-29 the legality of an agreement between the City and a classified employee for an amicable separation from employment was questioned. It was agreed upon the employee's resignation he would continue to receive his salary, car allowance, insurance, and a lump sum payment for accumulated vacation for four months. This office observed that while payment to public employees for accrued sick and/or annual leave and retirement benefits have been sanctioned, entitlement to severance pay has not. It was found that the agreement to the extent it allows severance pay in the form of the continuation of salary and car allowance, violated Article VII, Section 14 which prohibits donation of public funds.
While the anticipated lump sum payment herein is being termed early retirement benefits, it does not appear to be anything but severance pay. It is stated in the requested opinion that "this early retirement would involve offering him his pay up to his retirement date and we would pay his premium into the retirement system until the time he would be eligible to draw his retirement." Thus, as we understand it, the individual would be removed from the pay roll and the health insurance of the District but would not immediately enter the retirement system.
Moreover, while benefits for insurance and retirement for public employees are provided for in Article VII, Sec. 14(B) as an exception to the prohibition of expenditure of public funds these benefits must be reasonable and implemented through the formal adoption of a leave policy which is uniformly accorded to other employees. We do not feel a policy such as this is valid when only applicable to one employee.
Therefore, based upon prior opinions of this office and jurisprudence relied upon in rendering these opinions, we would conclude the anticipated payment as "early retirement" would be prohibited.
In regard to your question whether the Drainage District can still pay health insurance for nine of the employees through Blue Cross/Blue Shield and drop coverage on the two employees insured with PGRMA, we note that this office observed in Atty. Gen. Op. No. 79-643 the existence of statutory authority for political subdivisions to make group insurance contracts, and found when the employment of an individual was no longer in the best interest of a district due to an excessively long absence, the employee could be terminated. However, it was stated, "As long as the individual remains employed with the Waterworks District, there is no provision for his automatic termination from such GROUP coverage."
It was noted in Massachusetts Mut. Life Ins. v. Nails, 549 So.2d 826
(La. 1989) by spreading the risk in group insurance policies throughout a group the coverage is obtained for all in the group which might not be available to some members of the group individually. It appears that the legislative intent in R.S.22:215.6 follows this concept of making coverage available to some who would not otherwise be able to obtain coverage. R.S.22:215.6(E) provides that whenever a contract of one carrier replaces a health benefit plan of similar benefits of another carrier that each person who was validly covered under the prior health plan shall be covered by that carrier's plan of benefits, stating, "No previously covered person shall be considered ineligible for coverage solely because of his health condition or claims experience."
We find in Shrader v. Life Gen. Sec. Ins. Co., 588 So.2d 1309
(La.App. 1991) the plaintiff was employed with coverage under group health and accident policy with Shenandoah Life Ins Co. and in 1988 diagnosed with occlusive coronary artery disease. In January 1989 plaintiff's employer changed group health and accident coverage to United Employers Trust. The court stated that R.S. 22:215.6 continues preexisting condition coverage upon the replacement of one carrier by another finding that the legislative intent of the statute was to apply in a situation such as presented in the case before them. It was held that the limitation of coverage for preexisting conditions contained in defendant's policy must be modified by the provisions of R.S.22:215.6.
Similarly, in Reagan Equipment v. Pan Amer. Life Ins., 514 So.2d 253
(La.App. 1987) it was found public policy and R.S. 22:215.6
prohibits a gap in insurance coverage by virtue of the replacement of the insurance carrier.
Consistent with this is the observation in Cataldie v. La. Healthservice and Indem., 456 So.2d 1373 (La. 1984), that insurance is a business with public interest and the purpose of the insurance code is to regulate it in all of its phases. The court stated that the insurance code gives the health insurance policyholder substantial protection in the area of cancellation and related matters. Accordingly, it was found any provision of a policy in conflict with statutes is amended by law to conform with the statutory requirements.
We do not know if consideration was given to the statutory provisions of R.S. 22:215.6 which prohibits gap in coverage, or the provisions of either policy. However, we must conclude under public policy and the law that coverage cannot be carried for nine employees and discontinued for two others because of pre-existing conditions as long as they are employed.
We hope this sufficiently answers your inquiry, but if we can be of further assistance do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ______________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR