759 So.2d 274 (2000)
Kerry L. BADALAMENTI and Joseph M. Badalamenti
v.
JEFFERSON GUARANTY BANK and Kenneth E. Kopecky.
No. 99-CA-1371.
Court of Appeal of Louisiana, Fifth Circuit.
April 25, 2000.
Rehearing Denied May 30, 2000.
*275 Vallerie Oxner, Metairie, Louisiana, Counsel for Kerry L. Badalamenti and Joseph M. Badalamenti, Plaintiffs-Appellants.
Roy C. Cheatwood, Nancy Scott Degan, New Orleans, Louisiana, Counsel for Deposit Guaranty National Bank and Kenneth E. Kopecky, Defendants-Appellees.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
*276 CHEHARDY, Judge.
Plaintiffs, Kerry L. Badalamenti and Joseph M. Badalamenti, appeal the dismissal of their claims against Jefferson Guaranty Bank and bank officer Kenneth E. Kopecky. We affirm.
Plaintiffs' suit asserted claims against defendants for fraud and breach of fiduciary obligation arising out of plaintiffs' 1987 pledge of a certificate of deposit to secure a loan. The loan was made by Jefferson Guaranty Bank to a corporation of which plaintiff Joseph Badalamenti was both a shareholder and an officer. Plaintiffs alleged that defendants wrongfully induced them to pledge the certificate of deposit and that the Bank subsequently used the proceeds of the pledged certificate as a set-off against the defaulted loan. Plaintiffs sought to recover the amount of the certificate of deposit ($101,000.00), interest on the certificate of deposit ($14,645.00), damages for mental and emotional anguish, and attorney's fees.
In 1991 the trial court granted summary judgment in favor of the Bank, but that ruling was reversed on appeal and the matter was remanded for further proceedings. Badalamenti v. Jefferson Guar. Bank, 91-294 (La.App. 5 Cir. 11/13/91), 589 So.2d 633.
After a gap of several years, plaintiffs began conducting further discovery. In March 1998 plaintiffs filed a supplemental petition substituting Deposit Guaranty National Bank as defendant in place of Jefferson Guaranty Bank because Deposit Guaranty had acquired the Bank's assets and assumed its liabilities.
In August 1998 defendants filed an exception of prescription and, alternatively, a motion for summary judgment. On September 10, 1998 the trial court denied both the exception and the motion for summary judgment, finding that summary judgment was inappropriate because there were genuine issues of material fact and that the exception of prescription was "premature" because of "genuine issues of material facts which must be determined as to whether this action is under contract or tort." Defendants sought supervisory review of that ruling, but we denied their writ application. Badalamenti v. Jefferson Guar. Bank, 98-1190 (La.App. 5 Cir. 12/14/98).
After the case was set for trial defendants filed several motions in limine, seeking to exclude testimony, evidence and argument regarding several matters, specifically: (1) allegations of breach of fiduciary duty; (2) antecedent or contemporaneous oral agreements; (3) an alleged financial relationship between Gladys Badalamenti (president of Plaquemines Sand, Inc.) and Kenneth Kopecky; and (4) terms of an earlier agreement with First National Bank of Jefferson. Defendants also filed a motion to strike two witnesses who were not identified as potential witnesses during the discovery phase of the proceedings. Finally, defendants filed a motion to strike plaintiffs' demand for a jury trial. On April 26, 1999 the trial court granted all the defense motions.
As a result of the court's ruling on the evidentiary motions, plaintiffs agreed to submit the case on the following stipulations of the parties:
1. Plaintiffs acknowledged that due to the court's rulings on exclusion of evidence they were unable to meet their burden of proof to prevail on their claims and stated the stipulations were being made to allow entry of an involuntary dismissal under La. C.C.P. art. 1672 so plaintiffs could pursue their appeal rights.
2. Joseph Badalamenti held a one-third interest in Plaquemines Sand, Inc. and was a vice president of that corporation.
3. Mr. Badalamenti and/or Ms. Kerry Badalamenti executed the loan documents in his/her individual capacity and/or as an officer of Plaquemines Sand, Inc.
*277 4. The loan documents (listed specifically) were stipulated to be authentic and admissible as evidence.
5. The obligations of Plaquemines Sand on the loan documents matured on September 30, 1987, without payment by the corporation.
6. Because the corporation was in default pursuant to the terms of the loan documents, on October 30, 1987 the Bank redeemed the certificate of deposit pledged by Mr. Badalamenti and applied the proceeds to the corporation's obligations arising from the promissory note.
7. Plaintiffs became aware of the Bank's redemption of the certificate of deposit when they did not receive their monthly distribution of interest in November 1987.
8. In addition, plaintiffs attached to the stipulation a proffer consisting of statements of the nature of evidence they would have offered at trial absent the rulings on the motions in limine.
On June 3, 1999 the trial court rendered judgment pursuant to La. C.C.P. art. 1672 in favor of defendants and against plaintiffs, finding that plaintiffs had failed to produce sufficient evidence to meet their burden of proof and dismissing plaintiffs' claims with prejudice. Plaintiffs have appealed.

PRESCRIPTION
On appeal defendants have filed an exception of prescription which reasserts the grounds urged for that exception in the trial court. They argue that plaintiffs in effect allege that the Bank converted the certificate of deposit. Because conversion is a cause of action sounding in tort, defendants contend, it is subject to the one-year liberative prescription of La. C.C. art. 3492. Alternatively, defendants argue that claims for breach of fiduciary duty also are barred by the passage of one year, pursuant to La. R.S. 6:1124.
We find we need not reach the substance of the exception because the question of prescription has not been presented to us in a timely manner. The exception of prescription was considered and denied by the trial court. Therefore, the appropriate method to seek review would have been by appeal after final judgment or by answer to the appeal.
Appeal is the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court. La. C.C.P. art. 2082. Alternatively, an appellee who "desires to have the judgment modified, revised, or reversed in part" must file an answer to the appeal. La. C.C.P. art. 2133(A).[1]
Defendants did not appeal the trial court's refusal to grant their exception. Further, we cannot consider the filing of the exception of prescription in this court as an answer to the appeal because it was untimely.
An answer to an appeal must be filed "not later than fifteen days after the return day or the lodging of the record whichever is later." The trial court set the return day in this case as "45 days after the costs are paid." Although the record does not indicate when the costs were paid, the record was lodged in on December 15, 1999. Because the record would not have been prepared and lodged had the costs not been paid, we take the date of lodging as the later date and, therefore, the date from which to measure the time for filing an answer to the appeal. Fifteen days after December 15th is December 30th. Defendants' exception of prescription was *278 not filed in this Court until February 9, 2000, well past the fifteen-day period. We cannot, therefore, construe the filing of the exception as an answer to the appeal.
Accordingly, we dismiss the exception of prescription on the ground the issue is not properly before us.

MERITS
Under La. C.C.P. art. 1672, the trial judge may grant a motion for involuntary dismissal when the plaintiff has failed to show a right to relief.[2] The appropriate standard for the trial judge to use to determine the merits of the motion to dismiss is whether plaintiff has presented sufficient evidence to establish his case by a preponderance of the evidence. Yoes v. Shell Oil Co., 95-12 (La.App. 5 Cir. 5/10/95), 657 So.2d 241, 251, writ denied 95-2087 (La.11/17/95), 663 So.2d 714. A judgment granting a motion for involuntary dismissal should not be reversed in the absence of manifest error. Id.
On appeal plaintiffs assert the trial court erred in granting defendants' various motions in limine. The issues raised by plaintiffs are whether Jefferson Guaranty Bank had a fiduciary duty to plaintiffs and, if so, whether the Bank breached that fiduciary duty; whether the Bank had an obligation of good faith and, if so, whether the Bank was in bad faith; whether the Bank is liable to plaintiffs for damages as a result of such bad faith; whether plaintiffs are entitled to introduce parol evidence regarding the Bank's breach of fiduciary duty and the Bank's bad faith and/or lack of good faith in its contractual relations with plaintiffs; and whether La. R.S. 6:1124 applies to the facts of this case. Plaintiffs seek remand of the matter for a new trial at which they can present the evidence which they were unable to present previously.
Plaintiffs desire to present evidence that Kenneth Kopecky, the loan officer in charge of the Plaquemines Sand account at the Bank, induced plaintiffs to pledge their certificate of deposit to secure the corporation's debt by falsely representing that the pledge would be for a short term and that additional collateral was being pledged by both the corporation and the other stockholders. Further, they also wish to present evidence that the Bank knew the financial condition of the corporation was poor, but failed to disclose that information to plaintiffs. In addition, plaintiffs want to show that Kopecky (and through him, the Bank) acted in bad faith and in breach of fiduciary obligation because he owed money to Gladys Badalamenti (president of the corporation), but he failed to disclose that information to plaintiffs.
The pledge of the certificate of deposit was accompanied by numerous documents. The following were listed in the stipulations, in chronological order:
A. Collateral pledge agreement dated December 14, 1984, by and between Plaquemines Sand and the Bank executed on behalf of Plaquemines Sand, Inc., inter alia, by Joseph M. Badalamenti;
B. Hypothecation executed by Joseph Badalamenti dated December 14, 1984, executed by Joseph M. Badalamenti;
C. Assignment of Certificate of Deposit executed by Joseph Badalamenti dated December 14, 1984;
D. Commitment Letter dated March 18, 1985, executed on behalf of Plaquemines Sand by, inter alia, Joseph Badalamenti;

*279 E. Promissory Note by and between Plaquemines Sand and the Bank dated March 25, 1985, executed on behalf of Plaquemines Sand by, inter alia, Joseph M. Badalamenti, referencing the collateral pledge agreement No. 20482 dated 12/14/84; and personally endorsed by Joseph M. Badalamenti;
F. Assignment of Certificate of Deposit executed by Joseph Badalamenti dated March 25, 1985;
G. Hypothecation executed by Joseph Badalamenti dated April 8, 1985;
H. Assignment of Certificate of Deposit executed by Joseph Badalamenti dated April 8, 1985;
I. Promissory note by and between Plaquemines Sand and the Bank dated April 29, 1987 executed on behalf of Plaquemines Sand by, inter alia, Joseph M. Badalamenti, referencing the collateral pledge agreement No. 20482 dated 12/14/84; and personally endorsed by Joseph M. Badalamenti;
J. Assignment of Certificate of Deposit executed by Joseph Badalamenti;
K. Promissory Note dated August 12, 1987, by and between Plaquemines Sand and the Bank executed on behalf of Plaquemines Sand by, inter alia, Joseph M. Badalamenti, referencing the collateral pledge agreement No. 284722 dated 8/12/87; and personally endorsed by Joseph M. Badalamenti;
L. Hypothecation executed by Kerry Badalamenti dated August 12, 1987;
M. Collateral Pledge Agreement executed by [sic] on behalf of Plaquemines Sand by, inter alia, Joseph Badalamenti dated August 12, 1987.
The promissory note for which the certificate of deposit was pledged states that it is secured by a collateral pledge agreement, designating the certificate number and date. It defines the term "parties" as including not only the maker but also any endorsers, sureties and guarantors. It specifies, "All parties hereto.... agree that this note evidences and sets forth their entire agreement with the holder hereof and that no modification hereof shall be binding unless in writing and signed by the parties hereto." The note was signed by Joseph Badalamenti and other officers of the corporation.
The collateral pledge agreement identifies the collateral security being pledged as including "any renewals thereof" and contains the following language:
The undersigned further agrees that should any indebtedness secured by this agreement become due..., any and all funds deposited to the credit of the undersigned in Jefferson Guaranty Bank, or belonging to the undersigned and otherwise in the possession of or under the control of said Bank may be immediately applied thereto.
* * *
In the case of non-payment of the indebtedness secured by this agreement or any portion thereof at maturity or when otherwise due, said Bank is hereby irrevocably authorized to sell any securities held by it as collateral under this agreement at public or private sale at such time or times as it may elect without recourse to judicial proceeding, without demand for payment, notice or advertisement or any benefit of appraisement whatever and said Bank may become the purchaser of any and all said property so sold and thereafter hold the same in its own right absolutely.
* * *
The undersigned expressly relieves and releases Jefferson Guaranty Bank, as pledgee of any and all liability or responsibility whatever which might arise because of its failure to enforce by judicial process or otherwise any security delivered in pledge in accordance with this agreement or because of its failure *280 to give any notice or make any demand with regard thereto except when such notice, demand or enforcement is specifically requested or demanded by the undersigned. [Emphasis added.]
Similarly, Joseph Badalamenti executed an Assignment of Certificate of Deposit which authorized the Bank to "charge against the above certificate of deposit any note or notes representing unpaid balance of above loans at maturity or thereafter, with interest and costs, if not otherwise paid." The assignment also specifies that the Bank is authorized "to execute ... any document or documents which it deems necessary to perfect this assignment and any and all renewals" of the certificate of deposit.
Kerry L. Badalamenti, into whose name the certificate of deposit had been transferred, agreed to these terms in a hypothecation agreement she executed on August 12, 1987, which allowed the Bank to "accept and act upon any or all instructions given ... by the borrower [described in the document as Plaquemines Sand, Inc.] regarding any sale or other disposition" of the certificate of deposit, "including the delivery or payment of the same or any part thereof...."

I. Obligation of Good Faith/Breach of Fiduciary Duty
Good faith governs the conduct of the parties in whatever pertains to an obligation. La. C.C. art. 1759. Contracts must be performed in good faith. La. C.C. art. 1983.
Plaintiffs contend that when the Bank asked plaintiffs to pledge their certificate of deposit for the corporation's debt, the Bank had a duty to act in good faith to plaintiffs, including an obligation to be truthful. Plaintiffs contend that Kopecky, the bank officer, was untruthful in various representations he made to plaintiffs to induce them to make the pledge agreement. Specifically, plaintiffs allege that Kopecky said there would be additional collateral posted by others and that he misrepresented the assets and liabilities of the corporation. They contend the court erred in refusing to allow them to present parol evidence to prove the Bank's bad faith or lack of good faith.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046.
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.

La. C.C. art. 1848.
Plaintiffs allege not a subsequent oral agreement, but antecedent statements-representations made prior to their signing the documents. The very nature of the alleged representations, however, is contradicted by the language of the agreements plaintiffs signed. Note, in particular, the language in the collateral pledge agreements signed by plaintiffs, quoted previously in this opinion.
Fraud cannot be predicated on unfulfilled promises or statements as to future events. Watermeier v. Mansueto, 562 So.2d 920, 923 (La.App. 5th Cir.1990); see also, Automatic Coin Enterprises, Inc. v. Vend-Tronics, Inc., 433 So.2d 766, 767 (La.App. 5th Cir.1983), writ den., 440 So.2d 756 (La.1983).
When a written contract is clear and unambiguous, as in this case, testimonial evidence may not be admitted to negate or vary its terms. La.Civ.Code arts. 1848, 2046. Although there are recognized exceptions to this rule, a contemporaneous oral agreement or understanding between the parties that is not *281 made part of the written contract does not qualify as such an exception.
Whitney Nat. Bank of New Orleans v. Badalamenti, 499 So.2d 1267, 1269 (La. App. 4 Cir.1986). See also, Crochet v. Pierre, 94-543 (La.App. 5 Cir. 11/29/94), 646 So.2d 1222, 1225, writ denied 95-0004 (La.2/9/95), 649 So.2d 429.

II. Ambiguity
Plaintiffs argue alternatively that parol evidence should have been allowed because the loan documents were ambiguous. They fail, however, to point to any specific ambiguity, merely stating, "The plaintiff understood that the pledge agreement was not the complete agreement. There were supposed to be other agreements in connection with this loan."
As stated in Massachusetts Mut. Life Ins. Co. v. Nails, 549 So.2d 826, 832 (La. 1989), contracts are the law between the parties and, "like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense."
The rule ... does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away the terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties, and embodying requirements, compliance with which is made the condition to liability thereon.
Id.
We find no ambiguity in the documents and, therefore, no basis for introduction of parol evidence.

III. Applicability of La. R.S. 6:1124
La. R.S. 6:1124 provides:
No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. Any claim for breach of a fiduciary responsibility of a financial institution or any officer or employee thereof may only be asserted within one year of the first occurrence thereof. This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.
The statute was enacted by Acts 1991, No. 581, § 1. Section 2 of Act 581 of 1991 states, "This Act is deemed to be clarifying in nature and shall apply to prior and now existing relationships and transactions involving financial institutions."
This statute is the basis not only for defendants' exception of prescription, but also for their motion in limine to prohibit admission of evidence regarding breach of fiduciary duty. Plaintiffs argue the statute cannot be applied in this case because "[t]he events that led up to this lawsuit all took place in the 1980's, long before this statute was enacted." Defendants, in turn, rely on the provision in § 2 of Act 581 that the act "shall apply to prior and now existing relationships and transactions involving financial institutions." [Emphasis added.]
We agree with plaintiffs' argument that La. R.S. 6:1124 does not apply in this case, despite the retroactivity provision. Section 2 states it applies to "prior and now existing" relationships and transactions. We interpret that phrase to mean the legislature *282 intended the statute to apply to relationships and transactions which preceded enactment of the law, but which were still in existence at the time the law went into effect.
By the time La. R.S. 6:1124 became effective in 1991, the relationship between plaintiffs and the Bank arising from pledge of the certificate of deposit had ended nearly three years earlier. The Bank had redeemed the certificate of deposit in October 1987 following the corporation's default on the promissory note and had applied the proceeds against the loan debt. Thus, the pledgor/pledgee relationship between the Badalamentis and the Bank was over long before the passage of Act 581 of 1991. Cf. Garlepied v. Guaranty Bank and Trust Co., 94-549 (La.App. 5 Cir. 5/30/95), 656 So.2d 728, 735, writs denied, 95-1625 and 95-1638 (La.10/6/95), 661 So.2d 470.
Nevertheless, our finding that La. R.S. 6:1124 was not applicable to this case does not mean that plaintiffs prevail in their claims for violation of fiduciary duty. Although "the very nature of transaction between pledgor and pledgee gives rise to a trust relationship with consequent duty to protect the debt or obligation and collateral," Trans-Global Alloy Ltd. v. First Nat. Bank of Jefferson Parish, 583 So.2d 443, 453 (La.1991), the pledgee's duty is not to impair the collateral which it holds during the life of the pledge agreement. Where, as here, the pledgee has acted pursuant to the pledge agreement to satisfy the underlying debt which the pledge secured, there is no violation of duty.[3]
Accordingly, we find no manifest error nor error of law in the trial court's rulings in favor of defendants. For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the appellants.
EXCEPTION OF PRESCRIPTION DISMISSED; JUDGMENT AFFIRMED.
NOTES
[1] La. C.C.P. art. 2133(A) provides:

The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court.
[2] La. C.C.P. art. 1672(B) provides:

In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
[3] "Louisiana jurisprudence is sprinkled with cases which deny relief to parties who claim an agreement should be invalidated because of unilateral error which is caused, in large part, by the complaining party's inexcusable ignorance, neglect, or want of care." Scott v. Bank of Coushatta, 512 So.2d 356, 362 (La. 1987).