462 So.2d 229 (1984)
Dr. Harry B. CAPLAN
v.
LATTER & BLUM, INC.
No. 84-CA-96.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 1984.
Writ Granted February 4, 1985.
*230 Irl R. Silverstein, Gretna, for plaintiff-appellee.
Mitchell J. Hoffman, McCloskey, Dennery, Page & Hennesy, New Orleans, for defendant-appellant.
Before CHEHARDY, BOWES and CURRAULT, JJ.
CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Division "C", wherein the Honorable Joseph F. Grefer rendered judgment in favor of plaintiff-lessor, Dr. Harry B. Caplan, and against defendant-lessee, Latter & Blum, Inc., for lessee's abandonment of leased premises without justification.
The facts of this case, well articulated by the trial court, are as follows:
The record reflects that on October 31, 1980, Latter & Blum, Inc., as tenant, and Dr. Harry B. Caplan, as lessor, executed a lease agreement for approximately 2,786 square feet on the second floor of a building located on 3409 North Hullen Street in Metairie, owned by Dr. Caplan. Latter & Blum, Inc. located its commercial division in this Metairie office. This five-year least [sic] was to commence January 15, 1981, and terminate January 14, 1986. Said lease provides for a monthly rental payment of $1,973.48 each month, due on the first day of each month.
Shortly after moving into the premises, Latter & Blum, Inc. determined it had excess space and, with Dr. Caplan's permission, subleased approximately 538 square feet of said space to Health Care Associates, Inc. for a one-year term from April 15, 1981, through April 14, 1982. Subsequent thereto, Latter & Blum, Inc. decided to move its commercial division out of the North Hullen Street location and arranged to have a "For Lease" sign erected in front of the building advertising the availability of the second floor space. The record indicates that Dr. Caplan objected to the placement of said sign and removed the sign from the *231 premises. Latter & Blum, Inc. viewed this action as an attempt by Dr. Caplan to frustrate their efforts to sublease the office space. Eventually Latter & Blum, Inc. secured Duke Advertising Agency as a prospective subtenant and submitted to Dr. Caplan financial information, references, and certain plans the Duke Agency had prepared to install a sink in the leased premises. The testimony reveals that Dr. Caplan refused to accept Duke, the proposed subtenant. The record reflects that Dr. Caplan asserted three grounds for his refusal to consent to said subtenant. First, Dr. Caplan complained of the financial solvency of the prospective subtenant. Second, Dr. Caplan raised as an obstacle to his consent the increased square-foot rental proposed to be charged to the Duke Agency, which was substantially higher than the original base rate and which was not being passed on to the lessor. The third reason presented by Dr. Caplan was his objection to the proposed changes in the physical structure of the premises, which he asserted would have resulted in the placement of water lines directly overhead to his office which could potentially cause damage to his facilities.
Defendant, Latter & Blum, Inc. took the position that Dr. Caplan was arbitrary and capricious in his refusal to approve the sublease and that under the terms of the lease it was entitled and elected to terminate its lease without any further obligation to Dr. Caplan, [sic] As a result of this refusal, Latter & Blum, Inc. moved out of the space and refused to pay rent asserting that Dr. Caplan had breached his obligations under the lease, specifically lines 113-116 of said lease.[1]
The record reflects that Latter & Blum, Inc. vacated the premises on or about June 1, 1982. The record further reflects that the rental payment due on June 1, 1982, was not paid by defendant to plaintiff. Furthermore, in accordance with the default provisions of said lease, plaintiff notified defendant by certified mail on June 10, 1982, of its default and advised the defendant that it had 20 days to cure said default under the terms of said lease. Despite receipt of this notice by defendant on June 14, 1982, to date defendant has still failed to pay rent due for the month of June, 1982, and the subsequent months thereafter. As a result of Latter & Blum, Inc.'s abandonment and failure to make payment of the rent, Dr. Caplan filed this suit for breach of lease against lessee, Latter & Blum, Inc.
After a trial on the merits, judgment was rendered in favor of Dr. Caplan for the full amount of the accelerated lease together with 15 percent attorney's fees. Latter & Blum has appealed, asserting the following specifications of error:
that (1) the trial court erred in its interpretation of the applicable standard of reasonableness required of the lessor to refuse his consent to a sublease; that
(2) Caplan was not reasonable in refusing to consent to the sublease to Duke Advertising Agency under any applicable standard; that
(3) even assuming Latter & Blum, Inc. breached the lease, the trial court erred in awarding accelerated rent as opposed to following the election of remedies provided in the lease agreement between Latter & Blum, Inc. and Caplan; that
(4) assuming Latter & Blum, Inc. is held to have breached the lease, the trial court erred in awarding plaintiff attorney's fees in the amount of 15 percent of the amount claimed by plaintiff pursuant to lines 130-135 of the lease agreement; that
(5) the trial court erred in failing to require Caplan to mitigate his damages; and that
(6) the trial court erred in not recognizing that Caplan retook possession of the *232 leased premises for his own account on September 23, 1982 by listing the former Latter & Blum, Inc. space for lease at a price far in excess of the market value.
The trial court concluded Caplan was reasonable in withholding his consent. As recited in the facts, Caplan asserted three grounds for his refusal to consent. However, it appears the trial court focused upon Caplan's concern with the proposed sublessee's financial soundness for its determination that his refusal was reasonable.
Caplan requested a financial statement from the proposed sublessee. He testified that after reading this statement he, "... felt that the agency wasn't strong enough to meet the financial obligations of the lease. The main bulk of her accounts receivable werethe main bulk of her financial statement were in the account receivables and I didn't know how viable they were, how old they were, how collectible they were and whether they were pledged or not and I felt that if she collected 80 percent of those accounts receivable, which today on this economic market might not be an unrealistic figure my figures showed that she would still be $10,000.00 in deficit." (Transcript P. 15)
Dr. Caplan's financial concerns were amply supported by the testimony of Gerald Duhon, Certified Public Accountant, who qualified as an expert witness in the field of public accounting. Mr. Duhon testified that he was presented with the same financial information that was presented to Dr. Caplan, namely the statement of financial condition of the sublessee. Mr. Duhon further testified that he was requested to review the statement in terms of generally accepted accounting principles and to determine the financial ability of the sublessee to meet its obligations under the proposed sublease. He further testified that the balance sheet provided did not comply with the generally accepted procedures of accountancy because it contained no financial disclosures such as footnotes; no statement of operations, which would be a statement of income and loss; no statement of retained earnings and no statement of changes in financial position, which would give a summary of where the money came from and where it went. Mr. Duhon's opinion included findings that the sublessee appeared undercapitalized and highly leveraged in terms of its assets. When he made a comparison of the sublessee with national figures of comparably sized firms in the same business, he concluded that Dr. Caplan acted in a very prudent manner in rejecting the proposed sublease based upon the financial conditions presented to him. Appellant did not rebut this testimony.
This court must give great weight to the factual conclusions reached by the trial court and is prohibited from substituting our own evaluation and inferences for those of the trier of fact; instead, we are relegated to the duty of determining whether the trier of fact was not merely erroneous, but manifestly erroneous in those factual determinations. Rome v. State Farm Mut. Auto. Ins. Co., 439 So.2d 1253 (La.App. 5th Cir.1983); Mayeux v. Cane-Air, Inc., 426 So.2d 305 (La.App. 5th Cir.1983); Parr v. Kelly, 420 So.2d 1187 (La.App. 5th Cir.1982).
Appellant has failed to show in what manner the trial court was manifestly erroneous (clearly wrong) in concluding Caplan's consent was reasonably withheld. After carefully reviewing the record, we conclude the trial court's decision was soundly reasoned, well within discretion, and was not clearly wrong. For us to find otherwise would be, in effect, a substitution of our evaluation and inferences for those of the trier of fact which would constitute a violation of our established jurisprudential standard of review.
Appellant next complains that the trial court erred in awarding accelerated rents as opposed to having appellee cancel the lease. Appellant cites specifically lines 90-95[2] of the lease as the basis for such *233 contention asserting that since appellee chose to accelerate rents, but did not immediately release the premises, then appellee's only other course was to cancel the lease.
Appellee's suit, however, was based upon appellant's failure to pay rent. The trial court specifically found though that appellant's voluntary and unjustified abandonment of the lease premises clearly constituted a breach of that lease and, accordingly, accelerated the rent under lines 119-130[3].
The jurisprudence is clear that a lessor cannot collect accelerated rents and cancel his lease. The lessor can, however, accelerate the whole amount of the rent under the lease, collect them, and then, although under no duty to do so, may mitigate any damages he may have suffered as a result of lessee's abandonment. Lessor, however, is equitably bound to credit the original lessee for the amount received from the new tenants. Weil v. Segura, 178 La. 421, 151 So. 639 (1933); Preen v. LeRuth, 430 So.2d 825 (La.App. 5th Cir.1983); Lirette v. Sharp, 44 So.2d 221 (La.App. 1st Cir.1950).
The granting of accelerated rents by the trial court was proper under the facts of the case. However, as stipulated by parties, the premises in question were released by appellee to a new tenant on December 15, 1983. Accordingly, appellant is entitled to a credit of those rents due from that date until the expiration of the original lease.
Appellant initially failed to pay its rent on June 1, 1982. Occupancy by the new tenant began December 15, 1983. The appellant is therefore liable for eighteen and one-half months (18½) of rent at a monthly rental of One Thousand Nine Hundred Seventy-Three Dollars and Forty-Eight Cents ($1,973.48); or Thirty-Six Thousand, Five Hundred Nine Dollars and Thirty-Eight Cents ($36,509.38).
Appellant also asserts that awarding appellee 15 percent attorney's fees, as called for by the lease, was error by the trial court. Appellant cites Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La. 1982) for the proposition that attorney's fees must be reasonable and cannot be set by contractual provisions which provide unreasonable fees. Appellee, on the other hand, suggests that the Leenerts Farms decision has been overruled legislatively by the enactment of 1983 Louisiana Acts, No. 483 § 1, amending Louisiana Civil Code Article 1935.
There is no question the Leenerts Farms decision has been legislatively overruled. However the lease, which operates as law between the parties, clearly dictates that attorney's fees become due when the lease is breached. This lease was breached by appellant on June 1, 1982 when they failed to pay rent. Accordingly, the attorney's fees were also triggered on that date. As the attorney's fees came into existence well before the Leenerts Farms decision, we rule the lease, providing 15 percent attorney's fees, controlling.
Accordingly, for the foregoing reasons, the judgment in favor of appellee, Dr. Caplan, and against appellant, Latter & Blum, Inc., is affirmed; the judgment, however, *234 insofar as to its amount, is amended to a reduced amount of Thirty-Six Thousand, Five Hundred Nine Dollars and Thirty-Eight Cents ($36,509.38). Attorney's fees (15 percent) are to be based upon the reduced award of $36,509.38. All costs of this appeal are to be paid by appellant.
AFFIRMED IN PART; AMENDED IN PART; AND AFFIRMED AS AMENDED.
BOWES, J., dissents with written reasons.
BOWES, Judge, dissenting.
I respectfully disagree with the majority opinion of my learned brothers. I am of the opinion that Dr. Caplan was unreasonable in withholding his permission to allow Latter & Blum, Inc. to sublease to the Duke Advertising Agency, Inc.
Both the trial court and the majority place great emphasis on one of Dr. Caplan's objections to Duke as a sublessee, namely that the agency did not meet the financial criteria he required for the tenants of his building. In my opinion, this objection by Dr. Caplan is spurious. My reading of the record reflects that the doctor testified that he made no inquiry at all into the financial status of a recent previous sublessee (Health Care Associates) of Latter & Blum. Caplan not only approved that former sublease without any information as to the financial soundness of the sublessee, but he also approved it for an increased square-foot rental to Latter & Blum, the basis of his alleged second objection to the "Duke" sublease. There were no adverse financial effects to Caplan from this action. Therefore, he would have no reason to suddenly change his procedure and begin an inquiry into the financial status of sublessees.
Since Latter & Blum would have remained completely responsible for the lease payments even if Duke had defaulted and since there was never any question raised as to the financial stability of Latter & Blum and since plaintiff-appellee had previously approved the sublease between Latter & Blum and Health Care Associates without inquiry into financial status, and at a substantially higher per square-foot rate, I am of the opinion that these first two objections to the Duke sublease have no merit. In addition, based on past performance, Latter & Blum had good reason to expect the sublease to be approved.
The majority opinion attempts to justify Dr. Caplan's conclusions regarding the financial stability of Duke because they were corroborated by the testimony of Gerald Duhon, a C.P.A., who was offered as an expert witness at trial. I look with a jaundiced eye upon this reasoning for two reasons. First, I seriously doubt that an active medical doctor would be so well-versed in accounting and financial terms to value the viability and collectibility of accounts receivable (as Caplan testified he did) and conclude that Duke would still have a deficit of $10,000. Secondly, it is obvious that any support or corroboration from the C.P.A. for Caplan's financial objections came long after the fact, as Duhon testified he had been retained by Caplan's attorney "in connection with the trial."
While appellant did not directly offer testimony to rebut Duhon's opinion, defendant did introduce testimony that it located other office space for Duke; that the space located cost Duke more in rent than it would have paid to Latter & Blum as a subtenant; and that Duke presently remains in that space, paying the higher rent, without ever being in default. In my opinion, the proven performance of a business is certainly equal to the conjecture of an expertand both are "after the fact."
Finally, Caplan's third objection to the sublease that the trial court felt was justified, and was, therefore, embraced by the majority opinion, was a proposed change in the physical structure of the premises which would have resulted in the placement of water lines directly over Caplan's office and could result in great damage to his expensive equipment.
At first blush, this would certainly seem to be a meritorious objection. The only trouble is that it is a non-existent ground. The testimony of Lana Duke showed that, *235 this request was abandoned by Duke, was not a final requirement, and was not inserted in the sublease which was finally submitted to Caplan for approval. An inspection of this final proposed sublease, Exhibit L & B-5, which is in the record, proves this statement to be correct.
I am of the opinion that the trial judge was manifestly erroneous in his conclusions and, for these reasons, I respectfully dissent from the views expressed in the majority opinion, insofar as they contravene those of mine expressed above. Accordingly, I would reverse the decision of the trial judge and would find for the defendant, Latter & Blum, Inc.
NOTES
[1] Lines 113-115 of the lease are as follows:

"Lessee is not permitted to rent or sub-let or grant use or possession of the premises to any other party without the written consent of the Lessor, said consent shall not be unreasonably withheld, and then only in accordance with the terms of this lease." (Emphasis added)
[2] Lines 90-95 provide:

Should the premises be vacated or abandoned by Lessee because of ejectment for breach hereof, or otherwise, or should the Lessee begin to remove personal property or goods to the prejudice of the Lessor's lien, then the rent for the unexpired term, with Attorney's fees, shall at once become due and exigible, and Lessor, at his option, has the right to cancel the lease, or re-enter and let said premises for such price and on such terms as may be immediately obtainable and apply the net amount realized to the payment of the rent. (Emphasis added)
[3] Lines 119-130 provide, in part:

Should the Lessee at any time violate any of the conditions of this lease, or discontinue the use of premises for the purpose for which they are rented, or fail to pay the rent, ... then, at the option of the Lessor, the rent for the whole unexpired term of this lease shall at once become due and exigible; and Lessor shall have the further option to at once demand the entire rent for the whole term, or to immediately cancel this lease, or to proceed for past due installments only, reserving its right to later proceed for the remaining installments, all without putting Lessee in default, Lessee to remain responsible for all damages or losses suffered by Lessor, Lessee hereby assenting thereto and expressly waiving the legal notices to vacate the premises. (Emphasis added)