468 So.2d 1188 (1985)
Dr. Harry B. CAPLAN
v.
LATTER & BLUM, INC.
No. 85-C-0046.
Supreme Court of Louisiana.
May 14, 1985.
Rehearing Denied June 6, 1985.
*1189 Mitchell J. Hoffman, Susan Stagg Robinson, McCloskey, Dennery, Page & Hennesy, New Orleans, for defendant-applicant.
Irl R. Silverstein, Gretna, for plaintiff-respondent.
WATSON, Justice.
In this dispute over commercial real estate, the issue is whether the plaintiff-lessor, Dr. Harry B. Caplan, unreasonably withheld his consent to a sublease by his lessee, Latter & Blum, Inc.

FACTS
The primary lease between Caplan and Latter was for a term of five years commencing January 15, 1981, and ending January 14, 1986, for a monthly rental of $1,973.48. The printed lease form states:
"Lessee is not permitted to rent or sub-let or grant use or possession of the premises to any other party without the written consent of the Lessor, and then only in accordance with the terms of this lease. Should Lessee desire to sub-let, permission must be obtained in writing through Lessor or Agent and such sub-lease shall be handled by Lessor's agent at expense of the herein Lessee." (Tr. 4)
A typed insert in the printed form provides: "said consent shall not be unreasonably withheld." From the inception of the lease, the parties had understood that Latter would have about 500 square feet of extra space which it intended to sublease.
Latter subleased approximately 538 square feet to Health Care Associates, Inc., for a period of twelve months at a cost of $494 a month. Dr. Caplan signed a consent to the sublease on May 19, 1981. The printed form provided that: "the lessee under said primary lease shall not be released of the obligation to pay the rent due thereunder or any renewal or extension thereof or any other obligations of said lessee thereunder."
A letter to Dr. Caplan dated May 13, 1981, from the president of Latter confirmed a prior verbal agreement under which, if Latter entered into a sublease, one-half of the profits above the basic rent, plus utility charges, renovation costs, and a six percent real estate commission would *1190 be split with Dr. Caplan. The amount was calculated at $11.17 per square foot.[1] The letter was termed a notification of Latter's intent to live-up to the "`gentleman's agreement' or verbal agreement" made by Latter's agents.
Dr. Caplan did not require any financial information on Health Care Associates, Inc., but testified that he knew them by reputation. The differential between the Latter lease and the Health Care sublease was an insignificant amount.
In April of 1982, Latter attempted to sublease the remainder of the property leased from Caplan. An associate realtor with Latter, John E. Ellis, obtained a sublease agreement from Duke Advertising Agency, Inc., on April 13, 1982, using the standard Latter form signed by Health Care. It provided for a term of forty-three and a half months and rental of $1,873.33 per month. Duke gave a security deposit and a check for the first month's rent. Latter sent Dr. Caplan a letter with a copy of the sublease requesting Caplan's approval. In response, Dr. Caplan's attorney sent Latter a letter in which he declined to consent to the proposed sublease because: (1) Duke did not meet the financial criteria required for his tenants; (2) the improvements proposed by the sublessee, which included a sink, would increase water usage and expense; and (3) the lease was not in strict accordance with the terms of the primary lease because it called for a higher rental to be paid by the sublessee.
The parties engaged in further correspondence. Evidence of Duke's financial responsibility was provided and Latter was threatened with a damage suit by Duke if the sublease was not approved. Reimbursement was offered as to any increased water expense. Mrs. Duke testified that she then agreed to forget about the sink. It was stipulated that there was nothing in the sublease concerning a sink. Regarding Dr. Caplan's refusal to approve the sublease as arbitrary and unreasonable, Latter abandoned the leased premises and refused to pay further rent. Dr. Caplan filed suit for the accelerated balance due on the lease plus fifteen percent as liquidated damages under the contract.
The trial court decided that Latter was unjustified in abandoning the leased premises and gave Dr. Caplan judgment for the full amount of the lease plus fifteen percent as attorney's fees.
The court of appeal affirmed, concluding that the trial court was not clearly wrong in finding that Dr. Caplan was reasonable and prudent in refusing to consent to the sublease. 462 So.2d 229 (La.App. 5 Cir., 1984). A writ was granted to consider the matter. 462 So.2d 1255 (La., 1985).

LAW
LSA-C.C. art. 2725 provides:
"The lessee has a right to underlease, or even to cede his lease to another person, unless this power has been expressly interdicted.
"The interdiction may be for the whole, or for a part; and this clause is always construed strictly."
Illinois Cent. R. Co. v. International Harvester, 368 So.2d 1009 (La., 1979) held that the lessor did not impliedly consent to a sublease and ordered dissolution of the lease. However, there was good faith bargaining and no abuse of the lessor's right to withhold permission for the sublease. A lessor cannot unreasonably, arbitrarily, or capriciously withhold his consent to a sublease when subleasing is not prohibited or interdicted. Gamble v. New Orleans Housing Mart, Inc., 154 So.2d 625 (La.App. 4 Cir.1963), writ denied 244 La. 1027, 156 So.2d 229 (1963). Here, it was expressly stipulated that the lessor's consent could not be unreasonably withheld.

*1191 CONCLUSION
Dr. Caplan's excuses for declining to consent to the proposed sublease with Duke were not valid. First, Duke's financial status was immaterial because Latter would have remained bound for the rental.[2] Next, the sink issue was not critical to the transaction, Mrs. Duke having agreed to forget about the sink. Finally, Dr. Caplan had already prepared for the possibility of a sublessee paying a higher rental in his negotiations with Latter. It is clear that Dr. Caplan unreasonably withheld his consent to the lease. Since none of the pretexts he advanced were sufficient grounds for a reasonably prudent business person to deny consent, the conclusion is that he "unreasonably withheld" consent and violated the terms of the lease.
LSA-C.C. art. 2725 provides that interdictions on the power to underlease are strictly construed. It does not follow that the right to underlease, as opposed to an interdiction, is also strictly construed. Gamble, supra. Like the lessor in the Illinois Central case, Dr. Caplan refused to consent to the sublease in order to negotiate a new lease with Latter on more favorable terms. However, Latter had guarded against that contingency by the insert in the printed lease form which prohibited Dr. Caplan from unreasonably withholding his consent to an underlease.
The trial court and the court of appeal were clearly wrong in finding that Dr. Caplan was justified in refusing to consent to the sublease.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed; the judgment of the trial court is vacated and Dr. Caplan's suit is dismissed at his cost.
REVERSED; SUIT DISMISSED.
LEMMON, J., concurs and assigns reasons.
DENNIS, J., dissents with reasons.
LEMMON, Justice, concurring.
I disagree that the sublessee's financial status was immaterial because the sublessor was still liable on the basic lease. A lessor may reasonably require adequate financial responsibility for a sublessee in his building, since frequent turnover of tenants may reflect on the desirability (and may therefore lessen the value) of the property. However, the record established that the financial responsibility of this sublessee, when considered along with the fact of the sublessor's continued liability, did not constitute a reasonable basis for the lessor's refusal to consent to the sublease.
NOTES
[1] "A base rent of $8.50 plus utility charges of $1.00 plus the cost to renovate per square foot of $1.00, which equals $10.50 per square foot, plus six (6%) percent commission, equaling $11.17 per square foot. One-half of anything above this figure will be payable to Dr. Harry Caplan." (Exhibit L & B, No. 12)
[2] Actually, the record suggests Duke was financially responsible, with a substantial line of credit at Whitney National Bank.