845 So.2d 447 (2003)
LOUISIANA CASINO CRUISES, INC., d/b/a Casino Rouge and Its Parent Corporation Penn National Gaming, Inc.
v.
CAPITOL LAKE PROPERTIES, INC.
No. 2002 CA 0364.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
Freddie Pitcher, Jr., Rebecca B. Crawford, Baton Rouge, Counsel for Plaintiffs/Appellants La. Casino Cruises, Inc. d/b/a Casino Rouge and its parent corporation Penn National Gaming, Inc.
Richard Mary, Melvin "Kip" Holden, Baton Rouge, Counsel for Defendant/Appellee Capitol Lake Properties, inc.
Before: FOIL, McCLENDON, and KLINE,[1] JJ.
WILLIAM F. KLINE JR., J Pro Tem.
Plaintiffs-Lessees appeal the trial court's finding of defendant-lessor's "reasonableness" in denying consent to a leasehold mortgage. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
In June 1993, Capitol Lake Properties, Inc. ("CLP"), the owner of a certain tract of land on the Mississippi River in Baton Rouge, entered into a Ground Lease Agreement ("Lease") granting a lease thereon to Louisiana Casino Cruises, Inc. d/b/a Casino Rouge ("LCCI"). The Lease provided that LCCI would default if it caused the Lease to be assigned, transferred, or encumbered without the consent of CLP. Such consent was not to be "unreasonably" withheld.
*448 In April 2001, Penn National Gaming, Inc. ("Penn") acquired LCCI through a merger. Upon merger, LCCI became a guarantor to a $350,000,000 loan to Penn under a Credit Agreement, which required that LCCI mortgage its leasehold interest in the Baton Rouge property. Prior to the merger, LCCI, in accordance with the Credit Agreement, sought CLP's consent by asking them to sign a waiver and estoppel form.
CLP repeatedly declined to consent to the leasehold mortgage on the grounds that LCCI had defaulted under the Lease where at least one default was incurable, and CLP would not consider granting consent before all of the defaults were cured. CLP further declined to sign both the estoppel agreement and a revised estoppel agreement because they contained requests for actions not required by the Lease: a lessor's estoppel, and a waiver of rights that CLP would accrue by LCCI's default, such as the right to accelerate rental payments and the right to cancel LCCI's option to renew.
LCCI and Penn (hereinafter known together as "plaintiffs") filed a petition for mandatory preliminary and permanent injunctions ordering CLP to consent to the leasehold mortgage on August 6, 2001. On August 8, 2001, CLP filed exceptions of improper service, no right of action, and improper use of summary proceedings, which were later either waived or denied. After a hearing on the merits, the trial court denied plaintiffs' petition and assigned oral reasons therefor on November 8, 2001.
Plaintiffs appeal and present the following assignment of error for our review:
The trial judge erred when he denied the plaintiffs' petition for mandatory preliminary injunction on the grounds that:
a. defendant-lessor was reasonable in not wanting plaintiffs to place a mortgage on defendant's property; and
b. defendant-lessor was reasonable in not wanting to subordinate its interest in the lease to that of its lessee's creditors
where no evidence or testimony established either of these grounds, and in fact uncontradicted evidence to the contrary was presented. The mandatory injunction should have been granted.

DISCUSSION AND ANALYSIS
Plaintiffs, in arguing that CLP was "unreasonable" in denying consent to the leasehold mortgage, contend that: (1) the requested approval was for a leasehold mortgage, not a mortgage on CLP's property; (2) there was no required subordination of CLP's interest in the Lease; (3) plaintiffs had cured the defaults that occurred under LCCI's prior management; (4) the record showed that plaintiffs are strong, financially viable companies; and (5) plaintiffs would suffer irreparable harm through the denial of consent.
Plaintiffs urge that CLP was "unreasonable" in denying its consent because the mortgage encumbered the leasehold rather than CLP's ownership interest in the leased property. They find comfort in support of the assignment of error relative to subordination because the following language is contained in the trial court's oral reasons for judgment:
I cannot say that because there's evidence in the record that shows that certainly prior to and around the time of this sale, they were indicating that they were not going to do anything to subordinate their ownership interest.
Mr. Pitcher: I hate to interrupt the court's ruling, but it was never asked *449 to subordinate their ownership interest.
The Court: That's what it amounts to, Judge.
Mr. Pitcher: Okay.
Let me just say that I am going to deny the injunctive relief sought.
Whether we conclude that the trial court simply erred or misspoke in using the legal terms "subordination" and "ownership interest" or that the expressions were a finding that any consent to the leasehold mortgage "amounted to" a less favorable position for CLP in either its ownership or its lessor capacity, we will independently review the record to determine if the ultimate conclusion of "reasonableness" is correct.
Plaintiffs aver that CLP was not required to subordinate its interest; therefore, CLP was acting "unreasonably." Vice President and General Counsel for both Penn and LCCI, Joseph Lashinger, testified that plaintiffs renegotiated with their lender because CLP did not want to subordinate and that CLP was not required to subordinate its rights under the Lease.
Defendant, CLP, argues that, while it is true that plaintiffs previously withdrew their request for a subordination of the leasehold interest, there was no testimony or evidence as to the form or substance of any document that CLP would be required to sign should the trial court have ruled in plaintiffs' favor. We do find evidence from correspondence in the record that defendants would be required to sign an estoppel agreement which would constitute a waiver and an agreement to terms that CLP was not required to consent to under the Lease: (1) in a letter dated April 4, 2001, CLP's attorney, Richard Mary, stated, "However, I would point out that given the current litigation between the parties and the fact that the lease does not require the execution of an estoppel agreement, Capitol Lake will not execute any estoppel certificate[;]" (2) in a communication dated April, 12, 2001, CLP's attorney wrote:
Capitol Lake has recently received a revised Consent and Estoppel agreement from Mr. Barbin, counsel for [Penn] National. As indicated in my previous letter to you, Capitol Lake will not consider any documents until all defaults are cured. In addition, I would point out to you that the agreement contains requests not required by the lease, including [a] lessor's estoppel and as I previously advised you, Capitol Lake will not consider any requests for agreements not required by the lease[;]
and (3) in correspondence dated April 20, 2001, Mr. Mary, on behalf of CLP, said:
In addition, Capitol Lake has been presented with no Consent or related document that did not call for Capitol Lake to carry out actions not required by the lease. As indicated in the above letters to Mr. Brantley, even assuming that the defaults can be cured, Capitol Lake will not waive any rights it may have as a result of the defaults of LCCI, including but not being limited to the right to accelerate the rental and declare the options to renew provided in paragraph 2.07 as cancelled.
Plaintiffs claim that denial of consent is "unreasonable" because they cured all incidences of default. Defendant contends that plaintiffs' unconditional agreement to mortgage without consent is an encumbrance in violation of the Lease and constitutes a default. CLP further asserts that plaintiffs defaulted, under the terms of the Lease, when LCCI aligned with the Gaming Control Board to make CLP submit to a suitability inquiry.
In response to plaintiffs' argument that CLP has no "reasonable" economic basis *450 for denying consent because Penn and LCCI are strong, financially viable companies, CLP's expert economist, Dr. James A. Richardson, informed the court that, although plaintiffs are viable, CLP is being "reasonable" in denying consent because Penn's long-term debt to equity ratio and total debt to equity ratio are approximately twice the industry standard.
Furthermore, plaintiffs' expert, Dr. Lamar Jones, stated that Dr. Richardson had more experience with the gaming industry, that Dr. Richardson's finding of "reasonableness" was not frivolous and unsupported, and that reasonable experts could disagree on that particular issue. Also, the testimony of both Mr. Lashinger and CLP President, Astrid Clements, revealed that LCCI's total debt before the merger was $58,000,000$ 80,000,000; whereas, after the merger, LCCI's debt increased by the $350,000,000 owed by Penn under the loan.
The trial court did not dispute the economic vitality of Penn; however, in our consideration of the record, the debt to equity ratio, stated to be twice the industry standard, could be a genuine concern to the defendant-lessor.
Plaintiffs also assert that they are entitled to the mandatory preliminary and permanent injunctions forcing CLP's consent because to do otherwise would cause plaintiffs irreparable harm. As noted in the trial court's oral reasons for judgment, Penn made the decision to merge with LCCI with the knowledge that CLP denied consent to the leasehold mortgage; specifically, Penn knew that CLP emphatically refused to sign the estoppel agreement required by Penn's lender.
In a case discussing a lessor's refusal to consent to a sub-lease, the Supreme Court put forth that withholding consent is "unreasonable" where there are no "sufficient grounds for a reasonably prudent business person to deny consent." Caplan v. Latter & Blum, Inc., 468 So.2d 1188, 1191 (La. 1985).
After a review of the record in its entirety, we conclude independently that these facts constitute "sufficient grounds" for CLP to withhold its consent to the leasehold mortgage. Therefore, we cannot say that the ultimate finding of "reasonableness" by the lower court should be reversed.

CONCLUSION
For the reasons stated herein, the judgment of the trial court denying the petition of Penn National Gaming, Inc. and Louisiana Casino Cruises, Inc. is affirmed. Costs of this appeal are assessed to Plaintiffs/Appellants, Penn National Gaming, Inc. and Louisiana Casino Cruises, Inc.
AFFIRMED.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.