United States Court of Appeals
Fifth Circuit

**F I L E D**

September 21, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 04-31055

TENET HEALTHSYSTEM SURGICAL, L.L.C.,

Plaintiff - Counter Defendant- Appellant,

VERSUS

JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO. 1,
doing business as West Jefferson Medical Center,

Defendant -Counter Claimant- Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 03-2915-S

Before KING, Chief Judge, DAVIS, Circuit Judge, and FITZWATER, District Judge.[1]

W. EUGENE DAVIS, Circuit Judge:

Tenet HealthSystem Surgical, L.L.C. appeals the judgment of the district court dismissing

its claims for breach of lease and other claims against the defendant Jefferson Parish Hospital

Service District No.1, operator of West Jefferson Medical Center. Based on our conclusion that

West Jefferson's denial of consent to Tenet's proposed assignment of the lease was unreasonable,

we reverse.

I.

In April 2001, Tenet HealthSystem Surgical, L.L.C. ("Tenet") contracted to lease space in

a building owned by Marrero Shopping Center, Inc. ("MSC") in Marrero, Louisiana. The lease

---

[1] District Judge of the Northern District of Texas, sitting by designation.

provided for an initial term of five years and granted Tenet the right to renew for additional five-year terms through April 2021. Under terms of the agreement, Tenet was permitted to use the premises "for out patient surgical procedures and general medical and physicians offices, including related uses and for other purposes reasonably acceptable to Landlord." The lease allowed the lessee to assign the lease with the consent of the lessor and provided that such consent "shall not be unreasonably withheld." Tenet occupied the premises and began operating an outpatient surgical center.

In June 2003, West Jefferson Medical Center ("West Jefferson") purchased the property from MSC subject to the Tenet lease and other leases affecting the shopping center. The leased premises are located adjacent to the West Jefferson hospital campus and were a strategic purchase by West Jefferson to allow for future expansion of its facilities.

Tenet ceased doing business as a surgery center in August 2003. It sought to assign the lease to Pelican Medical-West, L.L.C. ("Pelican"). Pelican intended to use the premises for an occupational medicine clinic. Occupational medicine clinics primarily provide medical services to industry, treating mainly workmen's compensation cases, although walk-in business from the general public is also accepted. The services offered include urgent care, primary care, physical examinations, x-rays, phlebotomy, drug and alcohol testing, laboratory services, and minor surgical procedures.

On August 29, 2003, Tenet dispatched a letter to West Jefferson requesting consent to assign the lease to Pelican for use permitted under the lease and to alter the leased premises according to a plan that had been attached. West Jefferson responded that it would not approve the assignment, and, after a request by Tenet, explained that one of the reasons it had denied the

requested assignment was that Pelican intended to use the premises in a manner that competed with West Jefferson. The other stated reasons were later mooted by settlement or withdrawn.

Tenet filed suit in the 24th Judicial District Court in Jefferson Parish in September 2003, asserting claims for breach of the lease, violation of the Louisiana Unfair Trade Practices Act and Consumer Protection Laws, and unconstitutional deprivation of Tenet's property rights. The suit was subsequently removed to federal court on federal question grounds. West Jefferson asserted a counterclaim seeking a declaratory judgment that its refusal to consent to the sublease was reasonable and that its refusal did not constitute an unconstitutional deprivation of Tenet's property rights. In its argument in favor of summary judgment on the reasonableness of its consent, West Jefferson added the argument that it was reasonable in refusing consent to the assignment because the proposed use of the facility was not a permitted use under the terms of the lease.

On June 18, 2004, the district court granted summary judgment in favor of West Jefferson on its counterclaim. The district court held that the reasonableness of West Jefferson's actions must be considered from the perspective of West Jefferson. It also held that "West Jefferson did not unreasonably withhold consent to the proposed assignment to a third party who intended to open an urgent care, occupational medicine, and primary care facility whose operations were outside the scope of the activities of the assignor lessee, and intended to broaden the operations on the leased premises to include new areas of competition with the lessor." Because it found that West Jefferson's actions did not breach the lease, Tenet's other claims failed as well.

After the court granted summary judgment, the parties agreed to settle their claims related to proposed alterations to the premises; however, they expressly preserved Tenet's right to appeal

3

the district court's holding that West Jefferson acted reasonably in denying the sublease because Pelican would provide more competition with West Jefferson.  Tenet now appeals.

II.

Under Louisiana law, "[t]he lease contract is the law between the parties in defining their respective rights and obligations."  Fleniken v. Entergy Corp., 790 So.2d 64, 73 (La. App. 1st Cir.), writ denied, 793 So.2d 1250 (La. 2001).  In interpreting a lease, like other contracts, courts are bound to give legal effect to written contracts in accordance with the true intent of the parties. This intent is to be determined by the words of the contract when they are clear, explicit and do not lead to absurd consequences.  IP Timberlands Operating Co. v. Denmiss Corp., 657 So.2d 282, 294 (La.App. 1st Cir.), writ denied, 661 So.2d 1348 (La. 1995).

Article 2725 of the Louisiana Civil Code governs a lessee's right to sublease or assign the lease.

> The lessee has a right to underlease, or even to cede his lease to another person, unless this power has been expressly interdicted.
>
> The interdiction may be for the whole, or for a part; and this clause is always strictly construed.

La. Civ. Code Art. 2725.  When a lease contains the requirement that lessor's consent is required to sublease with no limitation, the lessor's right to refuse will be protected unless the lessor has abused that right.  Truschinger v. Pak, 513 So.2d 1151, 1154 (La. 1987).  When a lease provides that the lessor's consent to assign the lease may not be unreasonably withheld, as is the case in the MSC /Tenet Lease, "the lessor's right to refuse will be judicially protected unless the lessor's refusal was unreasonable."  Id.  "[W]ithholding consent is 'unreasonable' where there are no 'sufficient grounds for a reasonably prudent business person to deny consent.'"  La. Casinos

4

Cruises, Inc. v. Capitol Lake Props., Inc., 845 So.2d 447, 450 (La. App. 1st Cir. 2003)(quoting Caplan v. Latter & Blum, Inc., 468 So. 2d 1188, 1191 (La. 1985)).

These rules have been applied in few Louisiana cases, but the following applications emerge. A lessor may reasonably refuse his consent to a proposed sublease or assignment if the proposed sublessee or assignee is financially inferior to the present lessee, La. Casino Cruises; if the sublessee's activities don't fall within the permitted uses in the lease or if the sublessee's use would inhibit the lessor's ability to lease other spaces in the leased property, Van Geffen v. Herbert, 439 So.2d 1257 (La.App. 5th Cir. 1983); if the sublessee won't delineate his proposed activities or if the sublease causes the lessor to lose a tenant on the same property, Fourchon Docks, Inc. V. Milchem Inc., 849 F.2d 1561 (5th Cir. 1988). A lessor's refusal to consent to a sublease or assignment will be found to be unreasonable if the reasons given for the refusal are pretextual, Caplan, or if the proposed sublessee is identical to the lessee in financial status and proposed use of the property, Maurin-Ogden-1978 Pinhook Plaza v. Weiner Corp., 431 So.2d 747 (La. App. 5th Cir. 1983).

West Jefferson argues that its refusal to consent to Tenet's proposed assignment to Pelican was reasonable on two grounds. First, West Jefferson asserts that Pelican's contemplated uses of the facility exceed those permitted under the lease. Second, West Jefferson asserts that its refusal was reasonable because the proposed use of the facility poses more competition to its adjacent hospital. We will address each in turn.

A.

The use provision of the lease states:

Tenant shall use and occupy the Leased Premises for out patient surgical

5

procedures and general medical and physician's offices, including related uses and for other purposes reasonably acceptable to Landlord.

Tenet used the facility for an outpatient surgery center. Pelican planned to use the facility for an occupational medical clinic. As described by Dr. Kotler, the owner of Pelican, occupational medicine describes the type of customer the clinic solicits, primarily members of the workforce. The services offered by an occupational medicine practice are quite comprehensive, from physical examinations and drug screening to low acuity emergencies, depending on the demands of the employer and the walk-in patient. The clinic can treat patients presenting with depression, lacerations, broken bones, abdominal pain, or pneumonia, and provides related lab and x-ray services. In our view, nothing in this description takes the proposed practice outside the limits of a "general medical and physician's offices, including related uses," a permitted use under the lease.

This case is very different from the permitted use case West Jefferson relies on, Van Geffen v. Hebert, 439 So.2d 1257 (La. App. 5th Cir. 1983). In Van Geffen, the only issue to be resolved was "whether a lessor acted reasonably in refusing to permit a sublease to an orthodontist of premises which were originally leased solely for the practice of general dentistry." Id. at 1259. Evidence was presented that the terms orthodontics and general dentistry have specialized meanings in their industry. Orthodontic specialists cannot practice general dentistry without losing certification as a specialist. The express restriction to use the premises solely for general dentistry precluded use for an orthodontic practice. In this case, there was no similar evidence that an occupational medicine clinic did not fit within the category of a "general medical and physician's offices, including related uses." West Jefferson's main opposition was that

6

Pelican's operations in the leased premises would be different and broader than those of Tenet. We conclude therefore that Pelican's proposed use of the premises does not exceed the uses permitted under the Tenet lease.[2]

B.

West Jefferson also opposes the lease assignment from Tenet to Pelican on the basis that Pelican's broadened scope of operations would include new areas of competition with its hospital. Whether this objection is reasonable depends on from whose perspective reasonableness should be judged. The Louisiana Supreme Court has stated that withholding consent is unreasonable where there are no "sufficient grounds for a reasonably prudent business person to deny consent." Caplan 468 So.2d at 1191. West Jefferson argues that a reasonable business person in its position would deny consent to assign a lease that would bring new competition into the immediate area where it does business. Tenet argues that reasonableness must include consideration for the parties' expectations as of the inception of the lease, at which time Tenet's lessor was not a competitor to its operations. The resolution of this issue depends on two factors: (1) whether reasonableness is judged on objective factors or whether it can be judged on factors personal to

---

[2] In addition, the testimony of the Chief Executive Officer of West Jefferson raises a serious question whether the hospital's stated opposition to the proposed use of the facility on grounds that it was a non-permitted use, which objection which was raised only after litigation was commenced, was pretextual. The Chief Executive Officer of West Jefferson testified in his deposition that the hospital would object to any proposed use of the site if West Jefferson was engaged in the same pursuit. At the hearing on the preliminary injunction, he testified that the hospital would object to any use of the facility except as an ambulatory surgery center. West Jefferson cannot base the reasonableness of its refusal to consent to the proposed assignment of the lease on a reason that has no factual basis or is a pretext. Based on this testimony, its objection to the assignment based on the proposed use of the facility was in fact an objection to any change in the tenant and operations. See Caplan, 468 So. 2d at 1191 (Consent unreasonably withheld when excuses for refusal found to be invalid.)

7

the lessor, and (2) whether reasonableness is judged based on the alignment of the lessor and lessee as of the inception of the lease or at the time of the proposed assignment.

No Louisiana cases deal with a situation in which the identity of the lessor changed and the consent to assign was refused for reasons personal to the new lessor. We look for guidance then to treatises and case law from other jurisdictions. Those sources indicate that when determining the reasonableness of a landlord's refusal to consent to an assignment of a lease, the standard is that of a reasonable prudent man and, in applying that standard, the personal taste and convenience of the landlord should ordinarily not be considered. See generally 54 A.L.R. 3d 679, II.B.6.; Restatement of the Law, Second, Property (Landlord and Tenant), § 15.2 and cases cited therein.

In determining whether a landlord's refusal to consent was reasonable in a commercial context, only factors that relate to the landlord's interest in preserving the leased property or in having the terms of prime lease performed should be considered. Among factors a landlord can consider are the financial responsibility of the proposed subtenant, the legality and suitability of proposed use and nature of the occupancy. A landlord's personal taste or convenience are factors not properly considered. Id. Rather the landlord's objection "must relate to ownership and operation of leased property, not lessor's general economic interest." Economy Rentals, Inc. v. Garcia, 819 P.2d 1306 (N.M. 1991), cited in 54 A.L.R.3d 679. Under this standard, West Jefferson's refusal to consent to the assignment of the Tenet lease because Pelican would be a new competitor relates not to the ownership and operation of the leased property, but to West Jefferson's general economic interest as the operator of an adjacent business.

We have found only one case dealing with a situation, like that in this case, in which the

8

landlord at the time of the request for consent was not the original landlord. In <u>American Book Co. v. Yeshiva University Development Foundation, Inc.</u>, 59 Misc. 2d 31, 297 N.Y.S. 2d 156 (Sup. Ct. 1969), American Book Company leased three floors and basement space in a commercial building for executive and general offices, stockroom and storage. As in today's case, the lease could be assigned with the written consent of the landlord, which consent could not unreasonably be withheld. Some years after the inception of the lease, the building was acquired by Yeshiva University Development Foundation, Inc. When American Book sought consent to assign its lease to Planned Parenthood -World Population, the new landlord denied its consent on the basis that it considered the activities of the proposed subtenant to be inconsistent with the present use of the premises and with the educational activities of the university.

The New York Supreme Court concluded that the denial of consent was unreasonable. It noted that considering objective factors only, the proposed subtenant was "financially responsible, engaged in a respectable and legal activity, and intends to use the entire space of the prime tenant for identical purposes - as executive offices and a stockroom for its publications." 59 Misc.2d at 34. The court held that a religious institution operating a commercial enterprise should be held to established standards of commercial responsibility. <u>Id.</u> at 36. "Arbitrary considerations of personal taste, sensibility, or convenience do not constitute the criteria of the landlord's duty under an agreement such as this." <u>Id.</u> at 35. The objection of the new landlord was based on who the landlord was, not on any attributes of the proposed tenant. <u>Id.</u> at 34. The court also noted that when the plaintiff entered into the lease originally, it had the right to assign the lease to anyone who was financially, morally and legally acceptable by objective standards, and who would use the space in accordance with the provision of the lease. <u>Id.</u> at 37. The university, as

9

successor in interest to the prior owners, stepped into the previous owner's shoes and did not increase their rights under the lease. Instead, the court concluded that the lessee had a fixed contractual right which could not be varied because the successor landlord happened to have different attributes, likes, dislikes and activities. Id.

The rationale applied in American Book is compelling and not inconsistent with the law of the state of Louisiana. This rule respects the expectations of the parties as of the inception of the lease while protecting the landlord's right to reject a proposed sublessee who places at risk the landlord's interest in the leasehold or in having terms of prime lease performed. As applied to the facts of this case, West Jefferson's reason for denying consent to the assignment to Pelican based on increased competition is wholly personal to West Jefferson and does not relate in any way to an objective evaluation of Pelican as a tenant. Further, allowing West Jefferson to deny consent on a basis personal to it, a successor owner who took subject to the existing lease, would expand West Jefferson's rights under the lease to the detriment of the lessee in a manner not bargained for in the lease itself. Accordingly, we conclude that West Jefferson's refusal of consent to the assignment of the lease on the basis of increased competition was unreasonable.

III.

For the reasons stated above, we concluded that the district court erred in concluding that West Jefferson reasonably refused to consent to the assignment of the Tenet lease to Pelican. The judgment of the district court in favor of West Jefferson is reversed and the case remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

10